## 67847. DEL RIO v. THE STATE.

POPE, Judge.

The appellant was convicted of trafficking in cocaine and giving a false name to a police officer. On appeal, he seeks reversal of the cocaine trafficking conviction, contending that the trial court erred in denying his motion to suppress as evidence approximately 236 grams of cocaine seized from his person during a search which occurred at the Atlanta Airport.

The attention of Federal Drug Enforcement Administration agent Bennie Swint was drawn to the appellant as he was departing a flight from Miami to Atlanta carrying only a tote bag. Agent Swint testified that it was common practice for drug enforcement agents stationed at the airport to observe passengers arriving from Miami because it is a known "source city" for drugs. After deplaning, the appellant asked a ticket agent for directions to a connecting flight to Tulsa, whereupon agent Swint noticed that there were no baggage stubs attached to the appellant's ticket. His suspicions that the appellant might be a drug courier thus aroused, Swint followed him as he proceeded to the gate from which his Tulsa flight was departing, being joined en route by an Atlanta police detective. Both officers were dressed in plain clothes, and their weapons were not visible.

While the appellant sat waiting for his connecting flight, the two officers determined from computerized airline records made available to them by a ticket agent that the appellant had made his reserva-

tions less than 12 hours earlier and had purchased his ticket with cash. In light of his training and experience as a drug enforcement agent, this information strengthened Swint's suspicions that the appellant might be transporting illicit drugs. He and the other officer consequently approached the appellant, identified themselves as law enforcement officers, and asked if he would talk with them. The appellant responded affirmatively, and the three of them walked from the waiting area to a corner of the concourse, a distance of 20 to 25 feet, where Swint asked to see the appellant's airline ticket. The appellant handed the ticket over, and the other officer, observing that it had been issued in the name Jorge Canon, asked the appellant if this was in fact his name. The appellant responded affirmatively, whereupon the officers returned the ticket to him and asked him for additional identification. The appellant then produced a driver's license bearing his photograph and issued in the name Eusebio Del Rio. Asked to explain the discrepancy between the name on his ticket and the name on his driver's license, the appellant stated that Mr. Canon had purchased the ticket and had planned to use it but had become ill and had given the ticket to him. The officers then informed the appellant, who by this time had become visibly nervous, that they were looking for people who might be traveling through the airport with drugs; and they asked him if he had any. The appellant replied that he did not and, in response to further inquiry, indicated that he was willing to cooperate with the investigation. He then agreed to the officers' request that he accompany them to a small conference room located off the concourse about 30 or 40 yards away. The appellant's driver's license had evidently been returned to him at some point prior to this.

Upon entering the conference room, Agent Swint told the appellant that he wanted to search him but that he did not have to consent to a search. Swint then handed him a card containing the following statement of rights: "You have the right to allow or refuse to allow a search to be made of your person and the personal property that you have with you. You have the right to consult with an attorney before deciding whether you wish to allow or refuse to allow the searches. If you consent to the searches, any illegal objects found can be used against you in court proceedings. Do you understand? Should you refuse to allow your person and property to be searched I will contact a government attorney and attempt to obtain a search warrant. A judge or magistrate will then decide whether or not to issue a search warrant."

After the appellant had examined this card for a brief period, he unzipped his tote bag, and the Atlanta police detective began searching it. While this search was proceeding, Agent Swint told the appellant to sit down. The appellant complied, and Swint then lifted the

legs of the appellant's jeans so as to expose his boots. Noticing that one of the boots appeared to have a bulge in it, Swint reached inside and discovered a quantity of cocaine located in the appellant's sock. The appellant was then placed under arrest. A continuation of the search revealed the presence of a second packet of cocaine in the appellant's other boot, as well as a third packet lodged against his abdomen. No contraband was discovered in the tote bag.

The State's own witnesses testified that at the time these events took place, the appellant had only a "functional" knowledge of the English language, his native tongue being Spanish. Agent Swint testified that the appellant spoke only broken English but that he appeared to have no difficulty understanding what was being said. *Held*:

1. While the facts known to the officers at the time the search was conducted may have given rise to a reasonable suspicion that he was in possession of contraband, they were not sufficient to establish probable cause for such a belief. The Georgia Supreme Court's recent decision in *Bothwell v. State*, 250 Ga. 573 (300 SE2d 126) (1983), is not authority for a contrary conclusion. In that case, probable cause was held to exist for the issuance of a warrant to search the defendant's luggage based on a combination of three factors: his conformance to certain characteristics of the so-called "drug courier profile," the fact that he had given false information regarding his telephone number to police and airline personnel, and the fact that a police dog trained to detect the odor of controlled substances had indicated that such drugs were present in his luggage. Although the court went on to state that probable cause for the search would have existed even in the absence of the dog's reaction to the luggage, that statement was mere dictum and cannot, in any event, be reconciled with such United States Supreme Court decisions as United States v. Mendenhall, 446 U. S. 544 (100 SC 3051, 65 LE2d 1138) (1980), and Florida v. Royer, 460 U. S. 491 (103 SC 1319, 75 LE2d 229) (1983), wherein probable cause was held to be lacking despite the defendants' conformance to the drug courier profile and despite their use of assumed names. Compare *Berry v. State*, 163 Ga. App. 705, 709 (3) (294 SE2d 562) (1982) (wherein probable cause was held to exist when the arresting officer himself recognized the odor of cocaine hydrochloride emanating from a prominent bulge on the defendant's person).

2. The search of the appellant's person was not authorized as a search incident to an arrest pursuant to OCGA § 16-10-25 for the offense of giving a false name to a police officer. Agent Swint specifically testified that he did not consider the appellant to be under arrest for any offense prior to the discovery of the cocaine and stated that the appellant was free to leave "at any point during the interrogation." The conclusion is thus inescapable that the charge of giving a false name to a police officer was added later, as an afterthought. This

fact distinguishes this case from United States v. Pulvano, 629 F2d 1151 (5th Cir. 1980), wherein the defendant had been arrested for giving a false name to a law enforcement officer at the time the search was conducted.

A case with a factual setting somewhat more similar to the one before us is United States v. Berry, 670 F2d 583 (5th Cir. 1982). While being escorted to a DEA office located in the airport, the defendants there asked if they had violated any law, and the DEA agent escorting them replied that they had violated Georgia law by falsely identifying themselves but that "there would be no problem" if they were not carrying drugs. Id. at 589. Although the court commented that "it is likely that [defendants'] violation of Georgia law by falsely identifying themselves to police officers would provide the probable cause necessary for the office detention," the court declined to uphold the search on this ground, holding instead that the search was authorized by the defendants' consent. Id. at 604. Even if any precedential authority could be attributed to the court's comment regarding existence of probable cause under these circumstances, it would have no applicability to facts such as those before us in this case, wherein the officers evidenced a complete lack of intention either to arrest or to detain the appellant for the offense of falsely identifying himself.

3. Since the search of the appellant's person was not supported by probable cause and cannot be justified as a search incident to arrest for giving a false name, it follows that the validity of the search is dependent on whether the appellant consented to it. " 'On appeal of the denial of a motion to suppress(,) the evidence is to be construed most favorably to the upholding of the findings and judgment made.' [Cits.] The trial court's findings must be adopted unless determined to be clearly erroneous. [Cits.]" Dennis v. State, 166 Ga. App. 715, 716 (305 SE2d 443) (1983). The trial court's decision on questions of fact and credibility at a suppression hearing must be accepted unless clearly erroneous. Fuller v. State, 165 Ga. App. 55, 57 (299 SE2d 397) (1983). "The question whether the . . . consent to accompany the agents was in fact voluntary or was the product of duress or coercion, express or implied, is to be determined by the totality of all the circumstances, [Cit.]. . . ." United States v. Mendenhall, 446 U. S. 544, 557 (100 SC 1870, 64 LE2d 497) (1980).

After observing and hearing both the State's witnesses and the appellant testify in his own behalf, the trial court found that appellant was unworthy of belief. The trial court heard the appellant's testimony regarding his ability to speak and understand English, and heard rebuttal witnesses for the State testify that in his dealings with the authorities during his pre-trial detention, appellant was able to articulate his symptoms at sick call in English, to understand direction given in English, and to work with his jailers in the necessary

detention processes using the English language. All of this entered into the totality of the circumstances surrounding the search of the appellant and the finding by the trial court that appellant had the ability to understand what the agents were telling him before the search was made. The agents told the appellant he had the right to refuse the search. They also gave him a card to read which further explained his rights. The agent did nothing while the appellant read the card. No action to search was taken until appellant stopped reading the card, handed it back to the agents, and unzipped his bag. At this point, one agent searched the bag while the other agent asked the appellant to sit down, which appellant did, at which point the agent searched appellant's person and found cocaine. The dissent argues that this sequence is totally insufficient as a basis for the trial court's conclusion that appellant gave his consent to be searched. The dissent seems to contend that because appellant did not verbally consent to the search of his person after the search of his bag had begun, the scope of his consent was exceeded. We simply cannot agree. The record nowhere reflects any threat or coercion by the agents. The appellant was given time to consider his options. While a verbal response giving explicit permission makes the issue of voluntariness that much easier, the absence of a verbal response does not necessarily destroy the voluntary nature of consent in the total circumstances.

We must carefully consider and distinguish the very recent Supreme Court of the United States case of Florida v. Royer, supra. In Royer, a case which is unbelievably similar in its factual scenario to the instant case, the Supreme Court found that the defendant "was being illegally detained when he consented to the search . . ." and that the "consent was tainted by the illegality and was ineffective to justify the search." Florida v. Royer, 75 LE2d at 243, supra.

Although, as stated, the events and the chronology thereof in Royer are almost identical to the instant case, there are some crucial differences. In Royer, there was no doubt that the "detectives did not return [Royer's] airline ticket and identification but asked Royer to accompany them to a room, approximately 40 feet away, adjacent to the concourse. Royer said nothing in response but went with the officers as he had been asked to do." In the instant case, the trial judge was authorized to find that the appellant's airline ticket and his driver's license were returned to him. Furthermore, prior to asking the appellant to accompany them to the conference room, the officers specifically asked the appellant if he would cooperate with them in their investigation and there was evidence to support a finding that the appellant replied affirmatively. Furthermore, unlike the case sub judice, it does not appear that in Royer the officers explained the defendant's right to refuse to consent to a search or that they gave Royer a card specifically so providing. For all of these reasons, we

believe that Royer is sufficiently factually distinguishable so as to render its holding of tainted consent inapplicable to the case at bar.

Viewing the record as a whole, we find that there is evidence that, in the totality of the circumstances, appellant gave his voluntary consent to be searched, as the trial court found. It is not for this court to substitute its judgment for that of the trial court where there is evidence to support the trial court's conclusion. Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed. McMurray, C. J., Deen, P. J., Quillian, P. J., Birdsong, Carley, Sognier, and Benham, JJ., concur. Banke, P. J., dissents.*

DECIDED JUNE 27, 1984.

*Donald O. Nelson,* for appellant.

*Robert E. Keller, District Attorney, William L. McKinnon, Jr., Assistant District Attorney,* for appellee.

BANKE, Presiding Judge, dissenting.

Although the Fourth Amendment by its express terms prohibits only "unreasonable" searches and seizures, and although I do not believe the search at issue in this case was unreasonable, I am persuaded that it was conducted without the appellant's consent and that consequently it did not comport with current federal authority respecting airport searches.

In Florida v. Royer, 460 U. S. 491 (103 SC 1319, 75 LE2d 229) (1983), a case which the majority characterizes both as "unbelievably similar in its factual scenario to the instant case" and as factually distinguishable from it, the United States Supreme Court held that "where the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority. (Cits.)"

While the appellant's action in opening his tote bag for inspection may perhaps be construed as evidencing a willingness on his part to allow it to be searched (particularly since it contained no contraband), by no stretch of the imagination did he do or say anything which can be construed as a manifestation of consent to the search of his person, nor, in fact, was he asked to do so. Indeed, he was not even asked whether he understood the rights contained on the printed card which had been handed him. Under the circumstances, I cannot agree that the appellant's mere failure to resist or object to the search of his person amounted to an adequate showing of consent under Florida v. Royer. Consequently, I would reverse the denial of his motion to suppress. Compare United States v. Mendenhall, 446

U. S. 544 (100 SC 3051, 65 LE2d 1138) (1980) (wherein the defendant explicitly consented to being searched after twice being told she was free to refuse), and United States v. Berry, 670 F2d 583, 589 (5th Cir. 1982) (wherein, after being informed that they could refuse to consent to a search, the defendants acknowledged having understood their rights and, after discussing the matter between themselves, affirmatively consented to being searched).