## 72224. REID v. THE STATE.
(345 SE2d 635)

Pope, Judge.

Timothy Allan Reid was arrested at the Hartsfield International Airport and a quantity of cocaine was seized from his person. A hearing was held on his motion to suppress; at its conclusion the motion was denied and the evidence adduced was stipulated by the parties as trial evidence. The trial judge, sitting as the trier of fact, found Reid guilty as charged. He appeals the denial of his motion to suppress.

The facts were established through the testimony of Drug Enforcement Administration Agent Paul Markonni. Reid arrived at Hartsfield Airport on a flight from West Palm Beach, Florida. As he deplaned he was observed by Agent Markonni who was stationed in the gate area watching the Florida passengers disembark. Markonni's function was to identify persons who may be transporting illegal drugs by utilizing the "drug courier profile." The agent was dressed in casual clothes and was carrying a concealed weapon. He noticed an "unnatural bulge" on the inside of Reid's right leg that was causing his right trouser leg to move in a different manner than his left. Reid inquired about the departure gate for his connecting flight to Dayton, Ohio and then proceeded toward that gate. Agent Markonni continued to observe him, noticing "that his trousers were not flowing right" and that there was a cylindrical shaped object in his sock which appeared to be "pulling the sock down."

Reid was seated in the gate area for the Dayton flight when Agent Markonni made the decision to interview him. This decision was based solely on Reid's arrival from West Palm Beach and the fact that there was a bulge on his leg "that was so heavy it was causing the sock to droop." Markonni further testified that the bulge was "indicative of a possibility of drug trafficking." Markonni approached Reid, identified himself as a law enforcement officer and asked to talk to him. They walked to a less crowded part of the gate area and a second officer positioned himself behind Reid so that he could overhear the interview. In a normal conversational tone, Markonni displayed his credentials and asked to see Reid's airline ticket. Reid produced the ticket and Markonni observed that it was issued in the name "Alan Reed," that it was purchased for cash and that there was one baggage claim check attached. Markonni returned the ticket and asked Reid for identification. He gave the agent a Florida driver's license issued to "Timothy Alan Reid." The slight variation in the spelling of the last name was not significant to Markonni as he attributed it to an

error on the part of the airline.

Markonni then asked Reid if he was traveling for business or pleasure. He responded that his grandfather had died and he was going to see him. Reid became increasingly more nervous during the conversation. Markonni began to feel more confident that Reid was carrying a controlled substance. He advised Reid that he was a narcotics officer looking for drugs and that Reid's right leg appeared larger than his left. Markonni asked Reid if he had anything on his leg other than his sock, and he responded, "No." Markonni testified that it is not uncommon for persons to carry cigarettes or a wallet in a sock, but because Reid failed to admit that he was carrying anything, Markonni was certain the bulge contained illegal drugs. He asked Reid if he would raise his trouser leg and Reid complied.

Agent Markonni had had previous experience with many "bulges" and that between 75 and 100 of these were "leg bulges." In the "majority" of the "leg bulge" cases, drugs were found. When Reid voluntarily lifted his pants leg, Markonni's observation of what he saw was described as follows: "It appeared to be a cylindrical shaped object that came out over the top of his sock and caused his sock to droop. It did not appear to be big enough or wide enough to be a wallet and again it wasn't cornered off like cigarettes would be. And he also denied having anything in his sock which is just a bold face [sic] lie." After giving this description, Markonni was asked if "the appearance of the object that you saw at that time [was] consistent with anything that you had seen before." Markonni responded, "Yes. It was consistent with a bag containing controlled substances that I have seen many times." Reid was immediately placed under arrest for violation of the Georgia Controlled Substances Act. The object in his sock was removed in a search incident to the arrest; it contained approximately six ounces of cocaine.

Reid enumerates as error the denial of his motion to suppress evidence of the cocaine, contending that his warrantless arrest was without probable cause. Three tiers of police-citizen encounters have been identified by our courts: " '[1] communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, [2] brief "seizures" that must be supported by reasonable suspicion, and [3] full-scale arrests that must be supported by probable cause. (Cits.)' " *Allen v. State*, 172 Ga. App. 663, 665 (324 SE2d 521) (1984). It is uncontested that Agent Markonni was authorized to approach Reid in the gate area and that their initial contact was not coercive and did not trigger the protections of the Fourth Amendment. An initial contact between police officers and a suspect at an airport, where the officers simply asked if the suspect would step aside and talk with them, is the sort of consensual encounter that implicates no Fourth Amendment interest.

*Florida v. Rodriguez*, 469 U. S. ___ (105 SC ___, 83 LE2d 165) (1984). The sole question before us is whether, under the peculiar facts of this case, the initial encounter between Reid and Markonni matured into probable cause which is constitutionally mandatory before the agent was authorized to arrest Reid and conduct the warrantless search.

" ' "(T)he constitutional validity of (an) arrest without a warrant depends 'upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.' *Beck v. Ohio*, 379 U. S. 89, 91 (85 SC 223, 13 LE2d 142) (1964)." ' " *Allen*, supra at 667. " ' "In dealing with probable cause . . . as the very name implies, we deal with probabilities. They are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." [Cit.]' " *Sanders v. State*, 235 Ga. 425, 440 (219 SE2d 768) (1975). The totality of the information known to Markonni at the time that he placed Reid under arrest was that (1) Reid had arrived on a flight from West Palm Beach (south Florida is known to the agent as a distribution area for illegal drugs smuggled into the United States); (2) he had a bulge in his sock which, although similar in size and shape to a wallet or cigarettes, was also consistent with a bag containing a controlled substance; (3) his airline ticket was purchased for cash (although the name on his ticket and driver's license matched to the agent's satisfaction and his ticket envelope reflected that he had checked baggage); (4) he exhibited increased nervousness during his conversation with Markonni; (5) he offered a confused response to the question concerning his reason for travel; and (6) he denied having an object in his sock.

Our state and federal appellate courts have decided cases that are factually similar, but none have been so closely analogous so as to control our decision here. In *United States v. Elsoffer*, 671 F2d 1294 (11th Cir. 1982), the defendant deplaned from a source city and an officer observed a bulge shaped like a "good-sized softbound book" which extended under his clothing from his waistline to his crotch. The officer determined that the defendant's airline ticket had been issued in a name that was different from the name on his driver's license, and that the ticket was purchased with cash. The defendant initially consented to be searched but then withdrew his consent. The officers forcibly searched him and found that the "bulge" consisted of cocaine. The court determined that "the unusual size and shape of the bulge and, given its unusual size and shape, its abnormal position on Elsoffer's person alone provided not only reasonable suspicion but

also probable cause for Elsoffer's arrest." Id. at 1299.

In a similar case, *United States v. Roundtree*, 596 F2d 672 (5th Cir. 1979), the court determined that Agent Markonni had sufficient grounds for making an investigative stop and seizing a package from the defendant's person. Roundtree deplaned from a Los Angeles flight. The agent observed that the defendant had an unusual limp, as if he were trying to avoid moving his right leg rather than trying to avoid putting pressure on that leg. There was an "obvious, large bulge" on his right inside calf. Markonni approached the defendant, asked for identification and was given a driver's license in Roundtree's name. The airline ticket, however, was issued to a D. Carr, reflecting that the defendant was traveling under an assumed name. Roundtree consented to a search but then withdrew his consent. Nevertheless, Markonni seized the bulge which turned out to be a "large brick" measuring 9 inches by 4 inches by 2½ inches and which consisted of illegal drugs. Markonni's search of Roundtree was found to be "well within the bounds of the Fourth Amendment." Id. at 673.

In *United States v. Ehlebracht*, 693 F2d 333 (5th Cir. 1982), Markonni observed the defendant arrive on a Miami flight. He noticed an "unusual protrusion" under the left trouser leg; it appeared as if something was stuffed into the top of his boot. Upon further investigation, Markonni learned that the airline ticket had been issued to a James Scott, that the defendant spent only 4½ hours in Miami, that his ticket had been purchased with cash and that no one knew of him at the call back number given to the airline. The defendant agreed to talk to Markonni and then to accompany him to a private room. He produced his driver's license in his correct name and agreed to be searched but then withdrew his consent. Thereupon Markonni arrested him for giving a false name to the police. A search incident to arrest was conducted and the protrusion in his boot was found to be cocaine. The court found the arrest to be valid thus making the search incident to that arrest permissible.

In determining whether probable cause existed for Reid's arrest, we are also guided by our decision in *Del Rio v. State*, 171 Ga. App. 381 (320 SE2d 236) (1984). In that case, the defendant deplaned from a Miami flight carrying only a tote bag. The DEA agent surveilling the flight observed that there were no baggage claim stubs attached to his ticket. His suspicions having been aroused, he followed the defendant to the gate for his connecting flight. It was determined that the defendant had made his flight reservations less than 12 hours earlier and had paid for his ticket with cash. Two officers approached him and he agreed to talk with them. Defendant produced his airline ticket which was issued in an assumed name, and when asked if that was his correct name, the defendant nodded affirmatively. A driver's license in the name Del Rio was produced. The officers advised him

that they were looking for drugs and asked if he had any. He replied that he did not and by this time had become visibly nervous. The defendant agreed to accompany the officers to a nearby conference room where he was handed a card containing information concerning his rights with regard to a consent search. The defendant opened his tote bag, the officers then raised the legs of defendant's jeans, exposing his boots. Noticing that one of his boots had a bulge in it, the officer reached inside and found a quantity of cocaine in his sock. The *Del Rio* court held that "[w]hile the facts known to the officers at the time the search was conducted may have given rise to a reasonable suspicion that he was in possession of contraband, they were not sufficient to establish probable cause for such a belief." Id. at 383. In that case, however, the search was ultimately justified because the court concluded that the defendant gave his voluntary consent.

Applying the foregoing analogous authority, we hold that the totality of the facts known to Agent Markonni did provide probable cause for Reid's arrest, and the search of his person was thus justified as a search incident to a lawful arrest. The crucial consideration in the case at bar is the odd size and shape of the bulge in Reid's sock as observed by Markonni and as evaluated and analyzed based upon Markonni's experience. The documentation provided by Reid was essentially accurate and did not arouse Agent Markonni's suspicions, in contrast to the falsified airline tickets in *Elsoffer, Roundtree, Ehlebracht* and *Del Rio*. However, Reid's false response to the inquiry about the object in his sock, coupled with Markonni's observation and experience, provided the probable cause required for Reid's warrantless arrest. Accordingly, the search incident to that arrest was not violative of the Fourth and Fourteenth Amendments and the fruits of that search were properly considered by the trial court in rendering its decision.

*Judgment affirmed. McMurray, P. J., and Carley, J., concur.*

DECIDED MAY 5, 1986 —
REHEARING DENIED MAY 21, 1986 — 

*Lee Sexton*, for appellant.
*Robert E. Keller, District Attorney, Clifford A. Sticher, Assistant District Attorney*, for appellee.