## 76062. SCHMIDT v. THE STATE.
(372 SE2d 440)

McMURRAY, Presiding Judge.

Defendant was convicted of trafficking in cocaine and he appealed. Via four assignments of error, he challenges the trial court's denial of his motion to suppress evidence.

The evidence adduced at the motion to suppress hearing, viewed in favor of the State, is summarized as follows: In the early morning hours of November 4, 1986, Georgia State Trooper Ralston observed a 1986 Thunderbird with an Illinois license plate heading northbound on Interstate 75. The automobile was travelling at 64 m.p.h. (the speed limit was 55 m.p.h.) so Ralston stopped it. The time was 2:18 a.m.

Defendant exited the automobile and stepped to the rear. He was advised he had been speeding and was asked to produce a driver's license and vehicle registration. Defendant gave Ralston a valid Illinois license; he also gave him a rental agreement for the Thunderbird.

Defendant told Ralston he was unemployed; that he was a college student in northern Illinois; and that he was returning from central Florida where he had gone to purchase an automobile. (Ralston testified that defendant told him he had been to Tampa and Orlando.) In this regard, defendant told Ralston that automobiles could be bought cheaper in Florida and that was why he went there.

Examining the rental agreement, Ralston observed that defendant rented the Thunderbird on October 29, 1986, and that was not the first automobile he had rented. He also noticed that the rental price of the automobile was $290 per week (plus 25 cents per mile after the first 200 miles per day) and that defendant put down a $300 cash deposit on the automobile.

Looking through the car windows, Ralston saw two road maps, a blanket and pillow, a small travelbag and fast food trash. He also observed a radar detector on the dash.

Ralston gave defendant a written warning for the speeding violation. He returned the driver's license and rental agreement to defendant.

Defendant was asked if he would give his consent to a search of the automobile. Although he said he was in a hurry, defendant gave oral permission for a search. Then defendant signed a written consent to search form. The form was signed at 2:30 a.m.

Searching the automobile, Ralston obtained the road maps and found two motel bills. On the road maps, the route from Chicago to

Miami was highlighted. One motel bill showed that defendant stayed in Miami from October 31 until November 3, 1986, and that defendant made more than 20 telephone calls to Chicago during his stay. The other motel bill showed that defendant was in Miami for two days during the previous summer and that he made several calls to Chicago at that time.

Ralston removed the key from the ignitioin and went to open the trunk. The ignition key did not fit and Ralston asked defendant for the key to the trunk. According to Ralston, defendant replied that he was given only one key by the rental agency.

Ralston testified that in his experience, whenever a suspect failed to produce a key to the trunk, narcotics were ultimately found. (See, e.g., *Smith v. State*, 184 Ga. App. 304, 306 (361 SE2d 215).) Accordingly, Ralston pressed on, indicating that he was going to remove the rear seat to search the trunk. Defendant objected, expressing concern about the taking apart of a rental automobile.

Ralston explained that he could remove the rear seat simply, in a matter of minutes. Nevertheless, defendant withdrew his consent to search. Then, Ralston advised defendant that he would have to be detained until the arrival of a drug dog and a magistrate. Because defendant was not dressed warmly, Ralston suggested that he wait in the patrol car. Defendant did so. In Ralston's mind, defendant was no longer free to leave. The time was 2:45 a.m.

Approximately a half hour later, a drug dog and handler arrived. A magistrate was already on the scene. When the dog alerted, the magistrate executed a warrant to search the automobile. In short order, a large quantity of cocaine was discovered in the trunk. *Held*:

The fact that defendant was speeding authorized the initial stop by Ralston. *Minor v. State*, 180 Ga. App. 869, 870 (350 SE2d 783). The search of the interior of the rental automobile after the stop was performed legally pursuant to defendant's voluntary consent. *Smith v. State*, 184 Ga. App. 304 (1), supra. When defendant revoked his consent, Ralston terminated the search as he was bound to do. See *Conley v. State*, 180 Ga. App. 662, 664 (350 SE2d 45). At that point, defendant was no longer free to leave. Was he justifiably detained or was he arrested?

In *Radowick v. State*, 145 Ga. App. 231, 237 (244 SE2d 346), the police received a lookout message for a truck with a camper on the back. When the vehicle was spotted, a police officer stopped it. Defendants were told they were suspected of transporting contraband and they were asked for permission to search the vehicle. Defendants did not say "yes," and they did not say "no." It was suggested that defendants wait in the patrol car. They were not free to leave. While defendants were detained, other officers arrived. They did not have a consent to search form. Finally, after defendants were detained over

40 minutes a consent to search form was secured and defendants executed it. On appeal, this court ruled that the detention of defendants went beyond the minimal intrusion authorized by *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889), and amounted to an arrest.

In the case sub judice, defendant was detained for 30 minutes while the officer waited for the arrival of a drug dog and magistrate. During that period of time, defendant was not free to leave. As in *Radowick v. State*, 145 Ga. App. 231, supra, the detention of defendant constituted an arrest.

To say that the detention of defendant was a justifiable *Terry* stop stretches the imagination. After all, defendant had already been stopped and investigated. He produced identification, answered questions, and consented to a search of the interior of his automobile. Thus, the 30-minute detention of defendant by Ralson constituted an arrest. *Radowick v. State*, 145 Ga. App. 231, supra.

The State principally relies upon *United States v. Richards*, 500 F2d 1025 (9th Cir. 1974), to support its contention that the detention of defendant did not constitute an arrest. In that case, the defendant consented to a search of his personal belongings on board an airplane suspected of being used to smuggle drugs. During the course of the search, a drug dog was called in. The dog alerted to marijuana and the defendant was arrested. Defendant was detained for an hour before his formal arrest. It was held that the defendant's detention did not amount to an arrest.

*Richards* is inapplicable. At no point in time did Richards withdraw his consent to search. In the case sub judice, on the other hand, it is clear that defendant's consent to search was withdrawn and that defendant was detained nevertheless.

"Detention beyond that authorized by *Terry* [*Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889)] is an arrest and, to be constitutional, such an arrest must be supported by probable cause. [Cit.]" *Williams v. State*, 251 Ga. 749, 792 (312 SE2d 40). Having determined that defendant was arrested after he withdrew his consent to search, we must decide whether Ralston had probable cause to make the arrest.

"A 'warrantless arrest' is constitutionally valid if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense. [Cits.]" *Callaway v. State*, 257 Ga. 12, 13 (2), 14 (354 SE2d 118). See *Quinn v. State*, 132 Ga. App. 395, 396 (1) (208 SE2d 263). Thus, we look to the facts and circumstances to see if they warranted the conclusion that defendant was committing a crime at the moment he was arrested by Ralston. In so doing, we must bear in mind that probable

cause concerns probabilities: " ' . . . They are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' (Cit.)" *Sanders v. State*, 235 Ga. 425, 440 (219 SE2d 768).

Ralston knew that defendant was heading north after spending several days in Miami, a known drug source city; that he made a prior trip to Miami in the summer; that he made numerous calls from Miami to Chicago; and, most importantly, that he lied about his whereabouts. He also knew that certain statements made by defendant sounded fishy. Defendant said he was unemployed and that he was looking to purchase an automobile in Florida because they could be purchased cheaper there. Yet, defendant was driving an expensive rental automobile and he had rented an automobile previously. Defendant said he was a student. Yet, he was travelling at a time when students are usually in school and he was taking a week off to drive to Miami. Moreover, defendant's statement that he was only given one key by the rental company was an obvious excuse to prevent Ralston from opening the trunk.

(At this juncture we note the State's contention that probable cause is also supported by defendant's withdrawal of consent at the moment when Ralston evidenced a willingness to remove the rear seat of the automobile. We decline to view the exercise of a constitutional right as a factor in determining probable cause. Accordingly, we have given no weight to the withdrawal of consent in making our probable cause determination.)

In our view, the particular facts and circumstances of the case sub judice were sufficient to establish probable cause for an arrest. Ralston was warranted in believing that defendant was transporting contraband in the trunk of the rental automobile. See *Reid v. State*, 179 Ga. App. 144 (345 SE2d 635). It follows that defendant was arrested legally and that the evidence subsequently seized was neither tainted nor inadmissible. See *Still v. State*, 149 Ga. App. 792 (256 SE2d 133). The trial court did not err in overruling defendant's motion to suppress evidence.

*Judgment affirmed. Deen, P. J., Banke, P. J., and Pope, J., concur. Beasley, J., concurs specially. Birdsong, C. J., Carley, Sognier and Benham, JJ., dissent.*

BEASLEY, Judge, concurring specially.

I agree that the officer did not offend the Federal Constitution by further detaining the defendant for a short time to await the dog. *United States v. Sharpe*, 470 U. S. 675 (105 SC 1568, 84 LE2d 605) (1985). The investigatory purpose of this brief restriction of defendant's freedom was authorized under the circumstances. The dog's reaction would either confirm or fail to confirm the officer's belief that

defendant possessed drugs in the car trunk. In the event of the latter, Schmidt would be free to leave. In the event of the former, probable cause for the search would exist, and no one disputes that probable cause for his arrest would also be present.

Although I would agree with the majority's declining to view an exercise of the constitutional right to refuse consent to a search, as a factor in determining probable cause, that is not exactly the situation here. Schmidt's partial withdrawal rendered his consent selective. As the encounter unfolded, his relinquishment of a constitutional right became limited, and that later restriction of the permission in my opinion may legitimately be considered as an additional factor warranting the further investigation and necessitating the extension of the detention.

BENHAM, Judge, dissenting.

While I am in full accord with the majority's determinations that appellant withdrew his consent to search and that his detention became an arrest, I cannot support the conclusion that the arrest was supported by probable cause to believe that appellant was committing a crime.

"Probable cause to arrest exists where, based on objective facts and circumstances, a man of reasonable caution would believe that a crime has been or is being committed. [Cit.]" *Williams v. State*, 251 Ga. 749, 792 (8) (a) (ii) (312 SE2d 40) (1983). The question is whether, at the time appellant was arrested, "the objective facts known to the officer would justify issuance of a . . . warrant. . . ." *Love v. State*, 254 Ga. 697, 698 (334 SE2d 173) (1985). That an unemployed college student rents a car in northern Illinois in late October-early November, travels to southern Florida, makes telephone calls back to Illinois, and does not have a key to the trunk of his rental automobile does not lead a person of reasonable caution to believe that a crime is being committed. Too many unjustified conclusions have to be reached before one can say with any degree of certainty that the officer's suspicions of illegal activity evolved into probable cause to arrest. The fact that appellant was an unemployed student does not justify the conclusion that he could not afford to rent the car he was driving. Perhaps he was independently wealthy; perhaps his parents agreed to finance his trip to find an automobile. The fact that appellant was not attending classes for a week in mid-autumn does not justify the conclusion that he was engaged in illegal drug activity. Perhaps his school was closed for some type of break; perhaps appellant was engaged in some kind of independent study program. Even if classes were in session, if the fact that a college student skips school for a week to go to Florida constitutes probable cause to believe that he is engaged in illegal activity, then all young people driving cars

with out-of-state tags in a beach area are subject to arrest. The officer in the case at bar, well trained in drug interdiction, detained appellant because he had *suspicions* and wanted a drug-sniffing dog to confirm those suspicions. It was only after the dog alerted to the presence of contraband that the officer applied to the attending magistrate for a warrant. Thus, in the officer's mind, he did not have the requisite probable cause to arrest appellant until the drug dog alerted, some 50 minutes after the officer had, in fact, arrested appellant.

"This court knows and fully appreciates the delicate and difficult task of those who are charged with the duty of detecting crime and apprehending criminals, and it will uphold them in the most vigilant legal discharge of all their duties, but it utterly repudiates the doctrine that these important duties cannot be successfully performed without the use of illegal and despotic means. It is not true that in the effort to detect crime and to punish the criminal, 'the end justifies the means.' This is especially not true when the means adopted are violative of the very essence of constitutional free government. Neither the liberty of the citizen nor the sanctity of his home should be invaded without legal warrant [or probable cause]. Suspicion is no substitute for a legal warrant, and the badge of authority is the emblem of law and order, and gives no right to the wearer to arrest without warrant [and] imprison without authority." *Underwood v. State*, 13 Ga. App. 206, 213 (78 SE 1103) (1913).

I respectfully dissent from the affirmance of the trial court's denial of appellant's motion to suppress.

I am authorized to state that Judge Carley and Judge Sognier join in this dissent.

DECIDED JULY 7, 1988 —
REHEARING DENIED JULY 28, 1988

*Donald F. Samuel*, for appellant.
*Darrell E. Wilson, District Attorney*, for appellee.