A99A2133. THE STATE v. WILLIAMS.
(528 SE2d 554)

PHIPPS, Judge.

Malik Williams was indicted for trafficking in cocaine and possession of less than an ounce of marijuana. The State appeals the trial court's order granting Williams's motion to suppress drugs seized from his person. The issue before this court is whether the arrest and search of Williams were supported by probable cause to believe he was engaged in illicit drug activity. We find there was not probable cause and affirm the ruling of the trial court.

On December 7, 1998, Williams purchased a one-way ticket from Miami to Atlanta 51 minutes before the flight was to depart. He paid cash for his ticket and checked no bags. Instead, he carried a backpack over his shoulder.

Officer William Shelton of the Drug Enforcement Administration (DEA) Task Force in Atlanta learned of Williams's ticket purchase from the airline. He and his partner Agent Brinkley had been seeking information on persons who flew on short notice, paid for their tickets in cash and checked no baggage, as they believed those travel characteristics were consistent with a profile of a drug courier.

After receiving the information of Williams's travel, Shelton called a phone number Williams had given to the airline in Miami. According to Shelton, the number was supposed to be a Miami num-

---

[14] *Brooks v. State*, 232 Ga. App. 115, 118 (11) (501 SE2d 286) (1998).
[15] See *McClain v. State*, 267 Ga. 378, 383-384 (3) (b) (1) (477 SE2d 814) (1996).

ber, but it was instead the number for Peachtree Tub Repair in Atlanta.

Shelton and Brinkley then went to the gate at Hartsfield International Airport where Williams's flight was to arrive. As Williams exited the gate area, Shelton approached Williams, displayed his badge and asked if Williams would speak to him. Williams said, "Yes," and stopped when Shelton stopped walking.

Shelton asked Williams for his ticket, and he provided it. Shelton then questioned Williams, and Williams responded that he was unemployed, that he had spent two days in Miami and that he had gone there to visit his brother. When Shelton asked where his brother lived, Williams said his brother lived in Atlanta and not Miami. Williams then said he had gone to Miami to visit friends.

Shelton asked Williams for picture identification. According to Shelton, Williams's hands began to shake, his jaw muscle started clenching repeatedly and his heart started beating so hard Shelton could see movement through Williams's two shirts. Williams provided a Rhode Island driver's license.

Shelton then asked Williams if he could search his backpack and person. Williams consented initially, and inside the backpack, Shelton found a cellular phone, sunglasses, a sweater, a belt, a parking ticket from New York and a roll of plastic wrap which was being carried inside a plastic bag and not a box.

Shelton asked Williams about the plastic wrap, and Williams stated that he had picked it up in the room where he had been in Miami. He elaborated that some of his friends had been packaging cards and gifts with it.

At this time, Shelton told Williams that he and his partner wanted to pat Williams down. Williams stepped back, shifted from side to side and said he did not want them to search him. While Williams was shifting back and forth, Shelton thought he noticed that Williams's left pants leg did not lie flat against his leg. He was not sure, however, and asked Williams if he had anything taped to his leg. Williams said, "No." Shelton continued to seek permission to search Williams, but Williams refused.

Despite Williams's indication that he wanted to terminate the encounter, Shelton and Brinkley detained him and transported him away from the airport, which is in Clayton County, to the office of the DEA in Fulton County. There, a drug dog alerted on Williams's backpack.

Shelton then procured a warrant to search Williams's person from a magistrate in Clayton County. He returned to the DEA office in Fulton County, where, approximately an hour and a half after initially stopping Williams, he served him with a copy of the warrant and searched him. He found 407 grams of cocaine taped to Williams's

leg with plastic wrap, less than an ounce of marijuana in his shoe, and $1,112 in his pocket.

The trial court granted Williams's motion to suppress for two reasons. First, it found that the search warrant, which was issued by a Clayton County magistrate, could not authorize a search in Fulton County. Second, it found the DEA agents had improperly arrested Williams after the search of his backpack revealed no drugs and he withdrew consent for any further search. On appeal, the State asserts only that the trial court erred in finding there was no probable cause to arrest Williams at the airport.

Subject to strict boundaries regarding duration, purpose and scope, law enforcement officers may conduct brief investigative stops of persons with respect to whom they have reasonable articulable suspicion of criminal activity.[1] However:

> [d]etentions may be "investigative" yet violative of the Fourth Amendment absent probable cause. In the name of investigating a person who is no more than suspected of criminal activity, the police may not carry out a full search of the person or of his automobile or other effects. Nor may the police seek to verify their suspicions by means that approach the conditions of arrest.[2]

Here, the agents detained Williams for an hour and a half and transported him against his will away from the airport to the DEA's office. Shelton conceded in his testimony that Williams was not free to leave though he had indicated a wish to terminate the encounter. Williams's detention and transport certainly constituted an arrest, and probable cause was needed.[3]

At the suppression hearing, Shelton testified that based on the following factors, he believed he had probable cause to transport Williams to the DEA office and procure a warrant to search him: (1) travel characteristics consistent with drug trafficking; (2) incorrect phone number given to Miami ticket agent; (3) manifestations of nervousness; (4) inconsistent answers regarding whom he was visiting in Miami; and (5) the roll of plastic wrap in his backpack. While these factors may give rise to a reasonable suspicion of illicit drug activity, they are insufficient even when combined to constitute probable

---

[1] *Smith v. State*, 216 Ga. App. 453, 454 (2) (454 SE2d 635) (1995).

[2] *Florida v. Royer*, 460 U. S. 491, 499 (103 SC 1319, 75 LE2d 229) (1983) (plurality opinion).

[3] See id. at 499-508 (probable cause was needed to justify seizure of a nervous-acting young man who, under an assumed name, had purchased with cash a ticket to a drug " 'target city' " and had checked two heavy pieces of luggage).

cause to believe a suspect is transporting drugs.[4]

In support of its argument that there was probable cause, the State cites *Clark v. State*[5] and *Miller v. State*.[6] Both cases are distinguishable. Like the present case, *Clark* and *Miller* concerned instances where DEA agents stopped individuals in Hartsfield Airport after the individuals deplaned flights from South Florida. In both cases, however, probable cause arose chiefly from the individuals having patent, unusual bulges on their persons and the agents having extensive experience that those sorts of bulges signified the presence of drugs.[7]

Neither of those elements is present here. Though he looked for unusual bulges on Williams, Shelton was not sure he saw one. And, in fact, he did not consider the existence of a bulge in determining whether to detain Williams further after Williams withdrew his consent to search. There also was no testimony establishing a high correlation between any bulge Shelton *might* have noticed and the presence of illegal drugs.

Having found that there was no probable cause to support the continued detention of Williams after he withdrew his consent, we affirm the judgment of the trial court granting his motion to suppress.

*Judgment affirmed. Johnson, C. J., and McMurray, P. J., concur.*

DECIDED JANUARY 21, 2000.

*Robert E. Keller, District Attorney, Erman J. Tanjuatco, Assistant District Attorney*, for appellant.
*Suellen Fleming*, for appellee.

---

[4] See *Murphy v. State*, 230 Ga. App. 365, 368 (496 SE2d 512) (1998).
[5] 183 Ga. App. 838 (360 SE2d 447) (1987).
[6] 183 Ga. App. 702 (359 SE2d 683) (1987).
[7] 183 Ga. App. at 840; 183 Ga. App. at 703.