A00A1546. THE STATE v. JONES.
(538 SE2d 819)

JOHNSON, Chief Judge.
The state appeals from the trial court's grant of Stephanie Jones' motion to suppress items seized from her car and purse, contending that the motion did not satisfy the requirements of OCGA § 17-5-30 (b), and that the search was supported by probable cause. We affirm

---

[5] See *Price v. State*, 237 Ga. App. 54, 56 (3) (513 SE2d 40) (1999).
[6] 236 Ga. App. 152 (1) (511 SE2d 258) (1999).
[7] Id. at 153 (1).

the trial court's decision.

1. The state contends that the motion to suppress should not have been considered by the trial court because it failed to state facts showing that the search and seizure were unlawful. The state alleges that, as a result of this deficiency, it was unaware of the grounds of the motion and was unable to adequately respond. This argument is without merit.

OCGA § 17-5-30 (b) provides that a motion to suppress shall be in writing and state facts showing that the search and seizure were unlawful. In cases involving warrantless searches, the factual showing required by OCGA § 17-5-30 (b) need not be made in great detail because, in such cases, many of the necessary allegations are negative facts (e.g., the search was conducted without a warrant, the movant did not consent to the search) and are conclusions based upon mixed questions of law and negative fact (e.g., the officer lacked probable cause to arrest or search).[1]

In her original motion, Jones moved to suppress all evidence gathered against her, including test results, statements she made to police, and all evidence seized from her or her car without probable cause, either with or without a warrant. No facts were included in the motion or brief filed in support of the motion.

Jones later filed an amended motion, stating therein that she "hereby amends her motion to suppress by adding the Police Reports attached hereto as Exhibit 1 and Exhibit 2 showing no probable cause to search Defendant's vehicle." The police reports included detailed facts showing the circumstances surrounding the stop, search, and seizure. Jones did not otherwise state or discuss the facts in the amended motion.

While we do not intend to encourage the type of draftsmanship used by the movant in this case and, in fact, we point out that counsel ran the very real risk of the motion not being adequate, we agree with the trial court that it was sufficient. Reports attached to the motion show the details of the search, including the date and location of the search, the identity of the person searched, the number of officers making the search, the identity of the material seized, the fact that the search was conducted without a warrant, the fact that Jones did not consent to the search, and the basis for and circumstances surrounding the stop. The motion includes the conclusion that there was no probable cause for the search.[2] Jones' motion was sufficient to put the state on notice as to the type of search involved (without warrant versus with warrant), which witnesses to bring to

---

[1] *Hill v. State*, 222 Ga. App. 839 (2) (476 SE2d 634) (1996).
[2] Id. at 839-840.

the hearing on the motion, and the legal issues to be resolved at the hearing.[3] The trial court did not err in considering the motion.[4]

2. The state contends the motion should not have been granted because the detention was reasonable and because police had probable cause to search Jones' car. We find that the detention was not a brief investigative stop but a full-blown arrest, requiring probable cause. Moreover, we find that the arrest and subsequent search were not supported by probable cause.

When faced with a motion to suppress evidence based on an illegal search, the state has the burden to prove the lawfulness of the search.[5] On appeal, we view the evidence in a light most favorable to the trial court's ruling.[6] Absent evidence demanding a finding contrary to the trial court's determination, we will not reverse the grant of a motion to suppress.[7]

A police officer testified that he had been notified by another officer to be on the lookout for a certain vehicle because the driver would be transporting drugs to Syntec Industries, which was the driver's place of work. The officer saw the car and started following it. After following the car for awhile, the officer estimated that the driver was traveling about 15 mph over the speed limit. He initiated a traffic stop, and Jones, the car's driver and owner, pulled into the Syntec parking lot and parked her car. Jones got out of her car and asked the officer "what the problem was." The officer replied that Jones was speeding and that the county decal on her license plate was obscured. Jones told the officer that she was running late and needed to go to work. The officer explained to Jones that he was going to just give her a written warning for the tag violation and a verbal warning for speeding. As the officer was filling out the written warning form, Jones, without being asked, told the officer that she used to have a drug problem, but that she no longer used drugs. The officer then asked if he could search her car for drugs. Jones said he could not. Jones kept telling the officer that she needed to get to work and that he could search the car when she was gone. The officer told her that she needed to be there during any search of the car. In response, Jones remarked that the officer would have to get a warrant.

The officer then directed Jones to stand next to the car, which she did. Jones kept moving around, saying she needed to go to work. The officer told her to "quit moving around so much and stay in one

---

[3] See id. at 840; *State v. Barnett*, 233 Ga. App. 496, 497 (1) (504 SE2d 531) (1998).
[4] See id.; *Hill*, supra.
[5] *State v. Winnie*, 242 Ga. App. 228-229 (529 SE2d 215) (2000).
[6] Id.
[7] Id. at 231.

spot." A drug dog and accompanying canine officer had arrived on the scene three minutes after the officer stopped the car, but it was police department policy to have a supervising officer on the scene before a K-9 free-air search for drugs could be conducted. The officer made Jones wait for a supervisor to arrive. The officer testified that he detained Jones based on her nervous demeanor, her statement about drug use, and information he had that she might be transporting drugs. The trial judge watched a videotape of the incident and concluded that Jones did not seem particularly nervous, just concerned about the time and anxious to get to work.

The canine officer, who was also the officer who relayed information to the arresting officer about the lookout for Jones' car, testified that he had information that "a certain white female named Stephanie Jones should be [in] a vehicle, a white vehicle approximately '90s model vehicle, which is going to be a Toyota Corolla. She should be en route to Westend — Westside Industrial Boulevard on the date in question," and "possibly" had illegal drugs in the car. He relayed this information to the arresting officer. The canine officer did not know how police got the information that Jones was possibly transporting drugs.

The canine officer testified that he was in the area at the time of the stop and overheard the arresting officer's transmission indicating that he was stopping Jones' car. He arrived on the scene in about three minutes and waited there approximately fifteen to twenty minutes before he began the canine search of Jones' car.

In deciding the legality of this warrantless search, we must first determine if the police detention of Jones was a mere investigative stop or a full-blown arrest. There is no "bright line" rule or rigid time limitation which can be used in determining whether the detention of a person constitutes a mere investigative stop requiring only an articulable suspicion or an arrest requiring the existence of probable cause at its inception.[8] As much as a "bright line" rule would be desirable, in determining whether a detention is reasonable, common sense and ordinary human experience must govern over rigid criteria.[9] Considerations include whether there was a swiftly developing situation and whether the officer diligently pursued a means of investigation that was likely to confirm or dispel his suspicions quickly, during which time it was necessary to detain the defendant.[10] An investigative detention must last no longer than necessary to effectuate the purpose of the stop, and the investigative methods

---

[8] *DiSanti v. State*, 190 Ga. App. 331, 334 (1) (378 SE2d 729) (1989).
[9] *Buck v. State*, 239 Ga. App. 828, 830 (522 SE2d 252) (1999).
[10] Id.

employed should be the least intrusive means reasonably available.[11]

In this case, the detention was more than a mere investigative stop requiring only reasonable suspicion. Jones had arrived at work, parked her car, and was attempting to report for work. She told the officer she was late for work and that he could search her parked car while she was at work. Thus, there was no rapidly developing situation which would justify detaining Jones. Furthermore, since the drug dog and his handler were already on the scene, despite any departmental rule to the contrary, police could have conducted the free-air search while the officer was issuing warnings for the traffic offenses. Such a procedure would have quickly confirmed or dispelled the officer's suspicions. The officer acted unreasonably in failing to recognize or pursue the less intrusive means of accomplishing his objective.[12] We agree with the trial court that, in requiring Jones to wait for the supervisor to arrive before the free-air search began, police detained Jones longer than was necessary and effected more than just a brief investigative stop.[13]

Jones' detention constituted an arrest, and, for the arrest to be legal, it was necessary for the officer to have had probable cause to arrest her at the moment the arrest was made.[14] He did not have probable cause at the moment of arrest. The information possessed by the officer at the time of the arrest — that Jones appeared to be nervous, perhaps because she was late for work, that she had used drugs in the past but had stopped, and that police had very general information from an unknown or at least undisclosed source that Jones was "possibly" transporting drugs — may have established reasonable suspicion to briefly detain her, but it certainly did not establish probable cause to arrest Jones or search her car and purse.[15] Inasmuch as there is a substantial basis for the trial court's decision, we affirm the grant of the motion to suppress.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED AUGUST 31, 2000.

*Tambra P. Colston, District Attorney, John F. McClellan, Jr.,*

---

[11] *Roberts v. State,* 193 Ga. App. 96, 98 (386 SE2d 921) (1989).

[12] See *Alex v. State,* 220 Ga. App. 754, 756 (2) (470 SE2d 305) (1996).

[13] *DiSanti,* supra, citing *Schmidt v. State,* 188 Ga. App. 85, 87 (372 SE2d 440) (1988); see *Migliore v. State of Ga.,* 240 Ga. App. 783, 786 (525 SE2d 166) (1999).

[14] See *DiSanti,* supra.

[15] See generally *State v. Williams,* 242 Ga. App. 34, 36-37 (528 SE2d 554) (2000); *Rucker v. State,* 199 Ga. App. 854 (406 SE2d 277) (1991).

*Assistant District Attorney*, for appellant.
*James A. Satcher, Jr.*, for appellee.