## A07A2366. GRANDBERRY v. THE STATE.
(658 SE2d 161)

MILLER, Judge.

Following a bench trial, Michael Grandberry was convicted of possession of cocaine with intent to distribute. Grandberry now appeals, asserting that the trial court erred in denying his motion to suppress. We agree and reverse, finding that although police officers were authorized to conduct a brief investigatory stop of Grandberry's vehicle, Grandberry's detention evolved into an illegal arrest.

In a ruling on a motion to suppress, we review the trial court's findings as to disputed facts to determine whether the ruling was clearly erroneous. *Vansant v. State,* 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). Where, as here, the evidence is uncontroverted and there

is no question as to the credibility of the witnesses, we review a trial court's application of the law to undisputed facts de novo. Id.

The evidence shows that at 10:47 p.m. on the evening of May 18, 2006, a caller to Thomas County 911 identifying himself as Rasheed Johnson reported that Michael "Cranberry" had attempted to rob him at a Grady County establishment known as Johnson's Meat Market. Based on the information relayed by the caller, the Thomas County dispatch issued a be on the lookout ("BOLO") for a black Neon with New York license plates being driven by a black male and heading toward Thomasville. According to the BOLO, the suspect was carrying a shotgun and narcotics.

Grady County officers responded to the scene of the reported crime at approximately 11:05 p.m., expecting to take a report from the complainant. The complainant, however, was not at that location, so at 11:07 p.m. the Grady County dispatch attempted to contact the complainant at the telephone number he had used to call 911. The complainant answered and informed the dispatcher that he was walking toward the crime scene and would arrive in about five minutes. At 11:21 p.m., the alleged victim had still not appeared at Johnson's Meat Market, and the dispatcher tried to telephone the complainant again. A man identifying himself as Ahmad Davis answered and informed the dispatcher that the complainant had asked to use Davis's cell phone to report the crime, and that Davis had last seen the complainant at the Pine Terrace trailer park, walking down the road and wearing all black.

While police were attempting to investigate the alleged robbery, a canine officer with the Thomasville Police Department spotted a black Dodge Neon with New York license plates driving toward Thomasville on Highway 84 at 11:12 p.m. and followed the car while waiting for backup. The officer stopped the car just inside Grady County at approximately 11:18 p.m. The canine officer and a deputy removed the driver, Grandberry, from the car, handcuffed him, placed him on the ground,[1] and then searched the vehicle for weapons and any additional suspects. The deputies found neither additional persons nor weapons.

The Grady County officers who had gone to the crime scene waited for the complainant, who never arrived. They were "riding around" when their dispatch informed them that a Thomasville officer had stopped Grandberry in Grady County, so they proceeded to the scene of Grandberry's detention, and called an investigator to meet them there. The first Grady County officers began arriving at

---

[1] The police apparently took such actions because the dispatch had indicated that the suspect was armed.

the detention scene at 11:24 p.m., and the investigator arrived at 11:54 p.m., approximately 35 minutes after Grandberry's detention began. The investigator then sent deputies back to the area of the crime scene, instructing them to search that area for the complainant. The complainant was never located.

After arriving at the site of Grandberry's detention, the investigator advised Grandberry that he had received information concerning a suspected armed robbery in which a shotgun had been brandished, advised Grandberry of his *Miranda* rights, and then asked Grandberry if the police could search his car. After Grandberry told the investigator that he knew nothing about an armed robbery and did not consent to a search, the canine officer with the Thomasville Police Department advised the investigator that the BOLO had referenced narcotics. At approximately midnight, and using the dog who had been at the scene from the time of the stop, the canine officer conducted a "free air sniff" around Grandberry's car. As a result of the sniff, the Grady County investigator authorized a search of Grandberry's vehicle, and police recovered cocaine, baggies, and scales from the trunk.

1. Grandberry contends that the trial court erred in denying his motion to suppress because the police stopped him without reasonable suspicion of his involvement in criminal activity. We disagree.

> *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), recognizes that although a police officer may not have probable cause to arrest someone, if there is a reasonable suspicion of criminal wrongdoing, based upon specific and articulable facts from which it can be determined that the action of the police officer is not arbitrary or harassing, the police officer may make a brief, investigatory detention of the individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information.

(Citation omitted.) *Hamm v. State*, 259 Ga. App. 412, 413 (577 SE2d 85) (2003).

The primary means by which officers acquire reasonable suspicion of criminal wrongdoing is personal observation, but information acquired from an informant may form the basis for reasonable suspicion if the information exhibits a sufficient indicia of reliability. *Slocum v. State*, 267 Ga. App. 337, 338 (599 SE2d 299) (2004). Where the information is provided by an identified victim of a crime, however, the information is presumed to be reliable. Id. "[P]olice are entitled to assume the veracity of the alleged victim or witness absent special circumstances which should put them on guard." 4 LaFave, Search and Seizure § 9.4 (g), pp. 193-194 (3d ed. 1996). In this case,

the dispatcher issued the BOLO based on information supplied by a person claiming to be the victim of a recent felony, who identified himself and the alleged perpetrator by name, and who described the car driven by the alleged perpetrator with particularity. The officer then stopped Grandberry based on the BOLO's description of the car, which included its model, color, New York tags, and direction of travel.

Grandberry contends that the State failed to show that the 911 call established reasonable suspicion of his criminal activity.

> [T]he deputy was entitled to rely on information received over the police radio . . . [but] this does not obviate the state's burden of coming forward with sufficient evidence that the collective knowledge of law enforcement officers gave rise to reasonable suspicion that would justify a *Terry* stop.

(Footnote omitted.) *Duke v. State*, 257 Ga. App. 609, 610 (571 SE2d 414) (2002). Specifically, Grandberry argues that because the complainant was never found, the police had received information from the equivalent of an anonymous tipster whose statements demonstrated only knowledge of current public information and therefore lacked sufficient indicia of reliability to establish reasonable suspicion of Grandberry's criminal activity. See *Florida v. J. L.*, 529 U. S. 266, 270-271 (II) (120 SC 1375, 146 LE2d 254) (2000) (anonymous tip that a young man standing at a particular bus stop and wearing a plaid shirt was carrying a gun contained no predictive information and so lacked indicia of reliability to establish reasonable suspicion). Although the complainant's reliability was subsequently put into question when he failed to meet police at the agreed-upon location, "[t]he reasonableness of official suspicion must be measured by what the officers knew before they [made the stop]." *Florida*, supra, 529 U. S. at 271 (II). See *McDaniel v. State*, 227 Ga. App. 364, 366 (2) (489 SE2d 112) (1997) (existence of a reasonable suspicion to stop a moving vehicle must be measured by current knowledge and not hindsight). At the time Grandberry was stopped, police had reason to believe they had received information from an identified victim who was on his way to the crime scene to meet with police officers, and not an anonymous tip. Accordingly, we conclude that police had acquired reasonable suspicion that Grandberry was involved in an attempted robbery and were justified in detaining him in order to confirm his identity and to maintain the status quo while conducting further investigation of the alleged crime. See *Lamb v. State*, 269 Ga. App. 335, 337 (604 SE2d 207) (2004) (police had reasonable suspicion to suspect defendant of criminal activity based on bartender's call to 911); *State v. McFarland*, 201 Ga. App. 495, 496

(411 SE2d 314) (1991) ("[w]e have no hesitation in concluding that [the officer], upon hearing a radio report that an identified person has observed an intoxicated person driving away in a described car, had reasonable grounds for stopping appellee's car based on his founded suspicion that the law against driving while intoxicated was being violated").

2. Grandberry further argues that even if the original stop was authorized under *Terry*, then the stop evolved into an illegal arrest. We agree.

A *Terry* stop is "a brief stop, limited in time to that minimally necessary to investigate the allegation invoking suspicion." (Footnote omitted.) *State v. Joyner*, 270 Ga. App. 533, 534 (607 SE2d 184) (2004). Grandberry argues that his detention, which lasted 40 minutes before the drug dog alerted to the presence of drugs in his car, exceeded the duration of the brief stop authorized by *Terry*. See, e.g., *Schmidt v. State*, 188 Ga. App. 85, 87 (372 SE2d 440) (1988) (detention for 30 minutes while the officer waited for the arrival of a drug dog and magistrate amounted to an arrest). The courts have been unwilling to place a rigid time limitation on *Terry* stops, however, and we cannot say that the length of Grandberry's detention, standing alone, rendered the stop unlawful. See *United States v. Sharpe*, 470 U. S. 675, 686 (II) (A) (105 SC 1568, 84 LE2d 605) (1985); *DiSanti v. State*, 190 Ga. App. 331, 334 (1) (378 SE2d 729) (1989) (no bright line rule can be imposed in determining whether detention was investigatory stop requiring only reasonable suspicion). Rather,

> [i]n assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.

(Punctuation and footnote omitted.) *Garlington v. State*, 268 Ga. App. 264, 270-271 (3) (601 SE2d 793) (2004). See *Sharpe*, supra, 470 U. S. at 686-687 (II) (B).

Although police initially had reason to believe that they had received information from an identified victim who was going to meet with officers within minutes, it became apparent shortly after Grandberry was detained that the complainant had failed to appear at the crime scene, contrary to his promise to do so. Moreover, police had no way to contact the complainant because he had not called 911 using his own phone. While the complainant had claimed Grandberry had a shotgun, no weapon was found in Grandberry's car. The police nevertheless held Grandberry while "rid[ing] around in the area" in

the hopes that they would find the complainant. The State contends that officers were diligently searching for the complainant, and that if they had found the complainant their suspicions as to Grandberry's criminal activity would have been quickly confirmed or dispelled. Given that the police had no way to contact the complainant, however, the police investigation could not be reasonably characterized as likely to conclude within any particular time frame. Meanwhile, the police were detaining Grandberry based solely on the word of the complainant, whose identity could not be confirmed and whose reliability had become an issue. Under these circumstances, law enforcement's detention of Grandberry for 40 minutes exceeded the scope of the brief investigatory stop authorized by *Terry*. See *Schmidt*, supra, 188 Ga. App. at 87; *United States v. Dortch*, 199 F3d 193, 200 (II) (A) (5th Cir. 2000) (justification for suspect's detention ceased when computer check came back negative, and the subsequent discovery of drugs following a canine search was the product of a Fourth Amendment violation).

> Detention beyond that authorized by *Terry* is an arrest, and, to be constitutional, such an arrest must be supported by probable cause. Probable cause to arrest exists where, based on objective facts and circumstances, a man of reasonable caution would believe that a crime has been or is being committed.

(Citations and punctuation omitted.) *McCarr v. State*, 197 Ga. App. 124, 125 (2) (397 SE2d 711) (1990). As police lacked objective facts and circumstances to believe Grandberry had committed a crime, they lacked probable cause to detain him beyond that authorized by *Terry*. The police discovered the cocaine, baggies, and scales in the trunk of Grandberry's car after Grandberry had been illegally detained. This evidence was discovered by exploitation of the violation of Grandberry's Fourth Amendment rights and is therefore inadmissible as the "fruit of the poisonous tree." See *Baker v. State*, 277 Ga. App. 520, 523 (2) (627 SE2d 145) (2006). It follows that the trial court erred in denying Grandberry's motion to suppress. In view of this finding, we do not reach Grandberry's contention that the free air search of his vehicle became illegal when the canine officer's dog, on its own volition, entered the inside of his car.

*Judgment reversed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED FEBRUARY 7, 2008.

*Melvin R. Horne*, for appellant.

■■■■■■■■■■■■■■■■

*Joseph K. Mulholland, District Attorney, Samuel M. Olmstead, Assistant District Attorney,* for appellee.