**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J, and BOGGS, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 23, 2015**

# In the Court of Appeals of Georgia

A15A1340. ELVINE v. THE STATE.                                    DO-051 C

DOYLE, Chief Judge.

In this interlocutory appeal, Anthony Elvine challenges the denial of his motion to suppress evidence obtained by police when he was arrested in a drug purchase sting operation. He contends that (1) police lacked probable cause to arrest him, so any evidence obtained during that arrest – including his cell phone and its contents – was inadmissible; and (2) a warrant authorizing a search of the contents of his cell phone was improperly issued based on the unlawful arrest. Because the record does not support a finding that the arresting officer had probable cause to arrest Elvine, we reverse.

> [There are] three fundamental principles which must be followed when conducting an appellate review of a trial court's ruling on a motion to suppress. First, when a motion to suppress is heard by the trial

judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. These principles apply equally whether the trial court ruled in favor of the State or the defendant.[1]

To the extent that "the evidence at a suppression hearing is uncontroverted and the credibility of witnesses is not in question, we conduct a de novo review of the trial court's application of the law to the undisputed facts."[2]

The evidence from the suppression hearing was uncontraverted and shows that after arresting a suspect in a narcotics sting operation, a drug enforcement officer observed the suspect's cell phone receive a text message from a person identified as

---

[1] (Citations and punctuation omitted.) *Brown v. State*, 293 Ga. 787, 802-803 (3) (b) (2) (750 SE2d 148) (2013), quoting *Miller v. State*, 288 Ga. 286, 286-287 (702 SE2d 888) (2010).

[2] *Jones v. State*, 291 Ga. 35, 36-37 (1) (727 SE2d 456) (2012), citing *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). See also *Barrett v. State*, 289 Ga. 197, 200 (1) (709 SE2d 816) (2011) ("[T]he trial court's findings on disputed facts will be upheld unless clearly erroneous, and its application of the law to undisputed facts is subject to de novo review.").

"Skeet." Skeet initiated a text message dialogue that the officer interpreted as inquiring about purchasing $325 worth of marijuana from the suspect. The officer texted Skeet back from the suspect's cell phone and arranged to meet him at a certain convenience store to consummate the sale. The officer did not specify a time to meet. Upon arrival at the store, the officer chose a vehicle he saw parked in the parking lot and texted Skeet that he would be in that vehicle waiting for Skeet to arrive.

Shortly thereafter, as the officer observed Elvine (whom he did not know) drive past the specified vehicle to park, the officer immediately texted Skeet that he was inside the store. Elvine parked next to the specified vehicle, exited his own vehicle, and began walking into the store. Before Elvine entered the store, the officer, along with a uniformed officer, stopped Elvine, informed him he had been texting with police, and arrested him. The officer then took possession of Elvine's cell phone and

accessed its contents[3] to confirm that the phone Elvine possessed included the text message exchange he had just had with the contact identified as Skeet.

Thereafter, the officer applied for a warrant to search the contents of Elvine's cell phone, despite having already accessed the contents after arresting him. The officer filled out an affidavit, stating as follows:

> On 09/07/2012 Anthony Elvine was taken into custody for criminal attempt to possess marijuana with intent to distribute as a result of an investigation by the Laurens County Sheriffs Office Drug Unit. During his arrest Elvine possessed a Pantech cellular phone bearing serial number 104800455219. Part of the investigation involved the interception of text messages between Elvine and law enforcement. The phone recovered from Elvine is believed to have been used as a part of the criminal attempt to possess marijuana with intent to distribute . . . and is believed to contain evidence of that violation of Georgia law, to include names and phone numbers of co-conspirators, incoming and/or outgoing phone calls, and/or text messages between co-conspirators and as well as between Elvine and law enforcement.

---

[3] The officer testified that he believed at that time he was authorized to search the contents of Elvine's cell phone incident to his arrest. See, e.g., *Hawkins v. State*, 290 Ga. 785, 786 (723 SE2d 924) (2012) ("[A] cell phone is 'roughly analogous' to a container that properly can be opened and searched [incident to arrest] for electronic data, similar to a traditional container that can be opened to search for tangible objects of evidence."), abrogated by *Riley v. California*,__U.S.__, __ (IV) (134 SCt 2473, 189 LEd2d 430) (2014) (holding that "a warrant is generally required before . . . a [cell phone] search, even when a cell phone is seized incident to arrest").

4

Based on the affidavit and the officer's testimony, the magistrate issued the search warrant. The officer's testimony before the magistrate was not transcribed, but the officer testified at the motion to suppress hearing that his testimony tracked what was in the affidavit. He testified that did not specifically recall informing the magistrate that he had already accessed the contents of the cell phone.

Elvine moved to suppress the evidence obtained from the cell phone, arguing that his arrest and the warrant were unlawful. Following a hearing, the trial court denied the motion, concluding that the arrest was lawful, the on-scene search of the cell phone was unlawful, but the search warrant was still valid because the supporting affidavit contained "no mention or reliance on the content of the cell phone." The trial court certified its ruling for immediate review, and this Court granted Elvine's application for interlocutory review.

1. Elvine contends that the police lacked probable cause to arrest him, so any evidence arising from that arrest must be suppressed. We agree.

A warrantless arrest is constitutionally valid if at the time of the arrest the arresting officer has probable cause to believe the accused has committed or is committing an offense. Probable cause exists if the arresting officer has knowledge and reasonably trustworthy information

5

about facts and circumstances sufficient for a prudent person to believe the accused has committed an offense.[4]

"The State carries the burden of showing a warrantless arrest was lawful, and the existence of probable cause must be measured by current knowledge, i.e., at the moment the arrest is made and not hindsight."[5]

> The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. . . [T]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and . . . the belief of guilt must be particularized with respect to the person to be searched or seized. . . To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.[6]

---

[4] (Punctuation omitted.) *Devega v. State*, 286 Ga. 448, 451 (4) (b) (689 SE2d 293) (2010).

[5] (Citation and punctuation omitted.) *Jackson v. State*, 191 Ga. App. 439, 441 (2) (382 SE2d 177) (1989).

[6] (Citations and punctuation omitted.) *Maryland v. Pringle*, 540 U. S. 366, 371 (124 SCt 795, 157 LE2d 769) (2003).

In this context, "[a] 'probability' is less than a certainty but more than a mere suspicion or possibility."[7]

Here, the officer's testimony from the suppression hearing showed that some time after the officer texted Skeet, Elvine showed up at the convenience store, parked, and began walking to the store entrance when he was arrested.[8] It was daytime, the store was open to the public, Elvine parked in a public area, and the officer testified he did not recall seeing Elvine reading or operating his cell phone at any time. There is no evidence that Elvine attempted to flee when he saw the officers, scanned the area for police, or otherwise engaged in any furtive movements or nervous behavior.[9]

---

[7] (Punctuation omitted.) *Bostic v. State*, 332 Ga. App. 604, 606 (774 SE2d 175) (2015).

[8] As found by the trial court, "[t]he Defendant exited his vehicle and approached the store. At this point, the officers approached him and arrested him."

[9] See, e.g., *Vega v. State*, 285 Ga. App. 405, 406 (1) (646 SE2d 501) (2007) ("Flight from the scene of a crime may constitute sufficient probable cause for an arrest under certain circumstances."); *Culpepper v. State*, 312 Ga. App. 115, 120 (717 SE2d 698) (2011) (nervous behavior and suspect's subtle attempt to put distance between himself and the officer were circumstances that contributed to suspicion authorizing an initial investigatory detention). Compare *Brown v. State*, 269 Ga. 830, 832 (2) (504 SE2d 443) (1998) (reversing grant of motion to suppress and finding lack of probable cause when officer observed nothing more than "nervousness, . . . furtive attempts at concealment, and the paper which was the object of that furtive behavior.").

7

Further, the hearing transcript lacks evidence that the timing of Elvine's conduct demonstrated that he was the person receiving text messages. The officer did not arrange the meeting at a specific time, which could have linked Elvine's timely arrival with an intent to buy marijuana, nor did the officer explain how long it took Elvine to arrive at the meeting location. Also, the officer testified that "once I observed him driving by the vehicle that I had told him . . . I would be in, I immediately sent him . . . another text [that I was in the store] to see how he would react." Thus, rather than showing that Elvine exited his vehicle *because* he received the officer's text message, this suggests that Elvine was *not* waiting for instruction from a text message that caused him to exit his car and approach the store. Taken on its face, the officer's account suggests that Elvine merely parked his vehicle and immediately began walking into the store, which is not suspicious behavior at a convenience store open to the public.

The only aspects of Elvine's conduct that the officer identified as suspicious were the facts that (1) Elvine parked next to the vehicle that the officer, posing as a drug seller, had described as his own, and (2) the vehicle was parked in a "ride-share"

area of the parking lot not normally used by general store traffic.[10] Nevertheless, it is undisputed that the officer did not know Elvine, nor did he have a description of the person who was receiving his text messages.[11] Elvine simply parked in a public parking area that the officer knew to be commonly used for ride shares. Thus, while the circumstances described by the officer could give rise to the suspicion or possibility that Elvine was the person sending incriminating text messages about a drug transaction, the record before us is insufficient as a matter of law to constitute probable cause to arrest Elvine for attempting a drug transaction.[12] Under the officer's

---

[10] The officer described the area as a place where "people typically park . . . and then they commute together . . . [it] is not an area where people would commonly park to go into the store."

[11] Compare *Gebremedhin v. State*, 202 Ga. App. 811, 812 (415 SE2d 529) (1992) (probable cause supported by combination of reliable tip describing the defendant with particularity and officers' observation of defendant, who matched the description, engage in suspicious conduct appearing to be open-air drug transactions with a lookout).

[12] See, e.g., *Lawrence v. State*, 300 Ga. App. 731, 734 (686 SE2d 532) (2009) (insufficient evidence to support probable cause), citing *State v. Jones*, 245 Ga. App. 763, 767 (2) (538 SE2d 819) (2000) (information possessed by officer, that defendant appeared nervous, had used drugs in the past, and was "possibly" transporting drugs, did not establish probable cause to arrest or search defendant); *Holmes v. State*, 252 Ga. App. 286, 288-289 (556 SE2d 189) (2001) (in context of investigatory stop, no reasonable suspicion of criminal activity where defendant, who was in an area known for drug activity and had approached officers' vehicle in a manner often used by "crack runners or dealers," did not attempt to evade officers or engage in any criminal

logic, any person of any description who parked in that area around that general time (whether or not they were using their cell phone) and attempted to enter the convenience store would be subject to arrest. Such conduct, without more, simply lacks a sufficient connection to criminal culpability to support a probable cause finding.[13] Accordingly, the trial court erred by concluding that the State carried its burden to demonstrate probable cause to arrest Elvine.

---

activity in their presence). See also *Jackson v. State*, 191 Ga. App. 439, 441 (2) (382 SE2d 177) (1989) (finding no probable cause to arrest when "[t]he only suspicious fact known to the officers when they detained appellant and the truck was that appellant was present in an area in which many drug transactions take place.") (emphasis omitted).

[13] See, e.g., *McNeece v. State*, 246 Ga. App. 720, 723 (2) (541 SE2d 696) (2000) (in context of investigatory stop, "the detaining officer did not have the requisite particularized basis for suspecting the driver of *this particular white van* of criminal activity") (punctuation omitted), citing *Vansant*, 264 Ga. at 321 (2) ("The officer's lack of specific information resulted in an unreasonable governmental intrusion."). The only case cited by the State, *Hawkins v. State*, 307 Ga. App. 253 (704 SE2d 886) (2010), abrogated on other grounds by *Riley*, __ U. S. at __ (IV), does not support a different outcome. In that case, the defendant "arrived at the place and time of the planned meeting in a car, the officer observed her entering data into her cell phone, and he contemporaneously received a text message from her, in which she announced her arrival." Id. at 265 (1). Those circumstances do not exist here.

2. Because the arrest was unlawful, any evidence obtained as a result is inadmissible unless it was available to police on some independent ground.[14] Thus, as a general matter, "the question is whether the evidence has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."[15]

Here, the State makes no argument that Elvine consented to turning over his cell phone or allowing its search, so it is clear that the officers could not have seized Elvine's cell phone absent the arrest. This, in and of itself, is problematic because "it was the seizure that in fact made possible the search that actually occurred."[16] Further, with respect to the warrant to search the contents of the cell phone, the affidavit considered by the issuing magistrate relied on evidence obtained by police pursuant

---

[14] See *Rashid v. State*, 292 Ga. 414, 419 (4) (737 SE2d 692) (2013). See also *State v. Stringer*, 258 Ga. 605 (372 SE2d 426) (1988) ("An arrest unsupported by probable cause and made solely for the purpose of investigating a crime in the hope that something will turn up as a result of the ensuing investigation, intrudes so severely on the interest protected by the Fourth Amendment that exclusion of the [evidence] is mandated.").

[15] (Punctuation omitted.) *Rashid*, 292 Ga. at 419 (4).

[16] *Wilder v. State*, 290 Ga. 13, 16 (2) (717 SE2d 457) (2011).

11

to the unlawful arrest,[17] despite the trial court's conclusion to the contrary. The affidavit stated that "[p]art of the [current drug] investigation involved the interception of text messages *between Elvine and law enforcement*."[18] But before searching Elvine's phone during the arrest, the officer did not know who he was texting, nor did he know Elvine; therefore, the officer could not have known that the incriminating text messages were "between Elvine and law enforcement," as he averred in the warrant affidavit. Thus, the trial court erred by concluding that "there was no mention or reliance on the content of the cell phone" in the affidavit supporting the search warrant. And because the warrant was premised on information obtained through the unauthorized arrest, the trial court erred by denying Elvine's motion to suppress the evidence obtained pursuant to the arrest or the warrant.[19]

---

[17] Compare *Reaves v. State*, 284 Ga. 181, 183-184 (2) (c) (664 SE2d 211) (2008) (initial warrantless search did not render evidence inadmissible because same evidence discovered after search warrant issued based on evidence gained independently of initial search)

[18] (Emphasis supplied.) At the suppression hearing, the officer summarized his own affidavit in a similar way: "[m]y affidavit indicated that Mr. Elvine had been taken into custody and that he had exchanged text messages between myself and law enforcement. . . ."

[19] See *Wilder*, 290 Ga. at 16 (2); *LaRue v. State*, 137 Ga. App. 762, 763 (1) (224 SE2d 837) (1976).

*Judgment reversed. Phipps, P. J., and Boggs, J., concur.*