**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY, P. J., and SELF, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**August 31, 2017**

# In the Court of Appeals of Georgia

A17A0816. HEITKAMP v. THE STATE.

RAY, Presiding Judge.

Following an incident in Cobb County where police officers discovered contraband after entering an apartment without a warrant, Patrick Heitkamp was charged with one count each of possession of more than one ounce of marijuana, possession of marijuana with intent to distribute, possession of a controlled substance, theft by receiving, and two counts of possession of methamphetamine. The trial court denied Heitkamp's motion to suppress the contraband, and this Court granted Heitkamp's application for interlocutory review of that order. On appeal, Heitkamp argues that the officers lacked probable cause, exigent circumstances or any other legal justification for entering the apartment and that the warrantless entry was illegal. He further argues that consent to the search of his person was obtained

pursuant to the warrantless entry and was, therefore, inadmissible. Because we find that there was not probable cause for the arrest of Heitkamp or the other residents of the apartment at the time of entry into the apartment, we reverse.

In reviewing the grant or denial of a motion to suppress, we construe the evidence most favorably toward upholding the trial court's findings and judgment. *Leming v. State*, 235 Ga. App. 710, 711 (1) (510 SE2d 364) (1998). The trial court's findings as to disputed facts and credibility must be adopted unless clearly erroneous. *State v. Bowen*, 231 Ga. App. 95, 95 (498 SE2d 570) (1998).

The evidence adduced at the motion to suppress hearing showed that at 10:30 p.m. on April 23, 2015, Officer (now Detective) McElwain of the Cobb County Police Department was dispatched to the Chattahoochee Apartment Complex after Richard Hall, the apartment's maintenance man, called 911. Hall reported a suspicious white vehicle backed into a parking spot. Because of the heavy foot-traffic between the vehicle and one of the apartment buildings, Hall suspected drug activity. He did not smell any illegal substances, nor did he observe any hand-to-hand transactions. However, he observed a lot of people leaning inside the vehicle.

Officer McElwain and a second officer ran the vehicle tag number on their way to the apartment complex and discovered that the vehicle had been reported stolen.

2

Once the officers arrived, Hall described the man who had been inside the vehicle as a white male wearing jeans, no shirt, and with tattoos. The location of the tattoos on the body was not specified.

Hall believed that the tattooed male had entered the 3800 building of the apartment complex. Officer McElwain and the other officer proceeded to the building and began knocking on doors. One of the residents told the officers he had seen a tattooed white male wearing jeans and without shoes walking a large, tan dog in front of the same building earlier. The resident believed this man lived in one of the apartments downstairs. The officers knocked on approximately eight doors before reaching the apartment in which Heitkamp was found.

When Heitkamp opened the door, a tan dog ran out of the apartment. At the same time, two white males who were standing behind Heitkamp ran further into the apartment. One of the men, later identified as Christopher Barfield, matched the description of the man believed to have been seen in the stolen vehicle; he was a white male with visible tattoos on the back of his arms, and he was wearing jeans. However, Barfield was not shirtless, as he wore a black tank top. Barfield ran around the corner, where the officers could no longer see him. The other white male ran into

the living room, while Heitkamp turned and walked away from the door, though not at a fast pace.

Officer McElwain testified at the motion to suppress hearing that the whole thing occurred so fast that there was not an opportunity to say anything before everyone took off. He explained that he entered the apartment at that moment because he believed that Barfield was their suspect since he ran to another part of the apartment as soon as he saw the officers and because he matched the description given by Hall and the other resident. Officer McElwain further testified that he believed that he had probable cause to arrest Barfield for theft of the vehicle and that he believed Barfield posed a threat when he retreated into a room in the apartment where the officers could no longer see him. He testified he had reason to fear for his and the other officer's safety at this point because his experience led him to conclude that weapons might be involved when there is a stolen vehicle involved and because the men ran away at the sight of the officers. However, he acknowledged there was no indication that weapons were present nor did he notice any threatening behavior from Heitkamp or anyone else.

After entering the apartment, Officer McElwain observed methamphetamine in plain sight on multiple surfaces in the apartment. He and two other officers then

removed the apartment's occupants, secured the apartment, applied for a search warrant, and interviewed the five individuals that were in the apartment after they had been given their Miranda warning. Officer McElwain also patted down the individuals, including Heitkamp, before the execution of the search warrant. He felt a large bulge in Heitkamp's front right pocket. He asked Heitkamp if he could search his person, and Heitkamp consented. Officer McElwain pulled a clear bag containing 16.5 grams of methamphetamine from the pocket. Upon the search of the apartment pursuant to a warrant, officers found a laptop bag filled with 36 grams of marijuana and a scale near where Heitkemp slept, as well as lines of methamphetamine, scales, and small baggies in essentially every room of the apartment.

This Court has recognized that a private home is "an unquestionable zone of privacy under the Fourth Amendment, and when a residence is involved, no amount of probable cause can justify a warrantless search or seizure absent exigent circumstances." (Citation and punctuation omitted.) *State v. Sims*, 240 Ga. App. 391, 392 (523 SE2d 619) (1999). Therefore, the State bore the burden of establishing that the officers had *both* probable cause and exigent circumstances to justify their intrusion into the apartment. See *Snider v. State*, 292 Ga. App. 180, 182 (663 SE2d 805) (2008) ("It follows that the officers' entry into the hotel room without consent

or a warrant violated [the defendant's] Fourth Amendment rights, unless the evidence showed that the officers had both probable cause for an arrest or search inside the room and exigent circumstances") (citation omitted).

1. Heitkamp argues that the trial court erred by denying his motion to suppress because the officers did not have probable cause to arrest Barfield and, thus, that the warrantless entry of the apartment was not justified. Based upon these facts, we do not believe the police had enough information at the time they encountered Barfield to conclude that he was the person seen in the stolen car. Certainly, they possessed a reasonable suspicion to further investigate that possibility, but we cannot say they had probable cause to arrest him at that time or to enter the home without a warrant.

This Court has explained that "[p]robable cause exists if the arresting officer has knowledge and reasonably trustworthy information about facts and circumstances sufficient for a prudent person to believe the accused has committed an offense." (Citation and punctuation omitted.) *Brown v. State*, 262 Ga. 728, 729 (2) (a) (425 SE2d 856) (1993). Accordingly, "when a court considers whether an officer had probable cause to arrest a suspect, the court must focus on the facts and circumstances then known to the officer, and it must inquire whether those facts and circumstances *could* lead a prudent person – that is, a reasonable officer – to conclude that the

6

suspect probably has committed an offense." (Citation omitted; emphasis in original.)

*Hughes v. State*, 296 Ga. 744, 748-749 (2) (770 SE2d 636) (2015).

> The probable cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. The substance of all of the definitions of probable cause is reasonable ground for belief of guilt, and the belief of guilt must be particularized with respect to the person to be searched or seized. To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police office, amount to probable cause. In this context, a probability is less than a certainty but more than a mere suspicion or possibility.

(Punctuation and footnotes omitted.) *Elvine v. State*, 334 Ga. App. 235, 237-238 (1) (779 SE2d 10) (2015). "Although we owe substantial deference to the way in which the trial court resolved disputed questions of material fact, we owe no deference at all to the trial court with respect to questions of law, and instead, we must apply the law ourselves to the material facts." (Citation omitted.) *Hughes*, supra at 750 (2).

Heitkamp argues that, at best, the information the officers had at that moment gave rise only to a mere suspicion or possibility that Barfield had committed a crime. We agree. The only information officers had that connected Barfield to the stolen car

7

was a phone call from Hall, the apartment's maintenance man, that he suspected drug activity due to foot traffic to and from a certain car parked in the apartment complex's parking lot and Hall's "vague description" of the occupant in the car, describing him as a "white male, wearing jeans, no shirt and tattoos."[1] Although Hall noted that he believed the man had gone into the 3800 building, Hall did not provide police with a description of the male's age, hair, or the location of his tattoos. Officers began knocking on doors of the 3800 building, and another resident informed them that the resident had noticed a tattooed white male walking a tan dog in front of the building earlier that day. When the officers knocked on Barfield's apartment door, Heitkamp opened the door and Barfield retreated further into the apartment upon seeing the officers.

> [W]hen probable cause is based, at least in part, upon information supplied by an informant, the State must demonstrate that the information is reliable. The information, however, is not to be judged by any rigid test. Generally, probable cause is determined by the circumstances surrounding (1) the basis of the informant's knowledge and (2) the informant's veracity or reliability. A deficiency in one may be compensated for, in determining the overall reliability of a tip, by a

---

[1] Certainly, in our society today, the wearing of jeans and possessing tattoos is a very common occurrence.

strong showing as to the other, or by some other indicia of reliability.

(Citation, punctuation, and footnote omitted.) *Lopez v. State*, 292 Ga. App. 518, 520 (664 SE2d 866) (2008). Here, the officers did not testify that they knew Hall or that he had a reputation for being truthful and reliable. However, even if Hall were determined to be a reliable source, he provided the officers only with a "vague description" of the man he saw inside the vehicle. A description that could describe any number of occupants of that apartment complex - a tattooed, white male wearing jeans. Compare *Ansley v. State*, 325 Ga. App. 226, 232 (2) (a) (750 SE2d 484) (2013) (officers had probable cause to arrest defendant when victim gave a *detailed* description of the robber, including his clothing and beard, and the direction in which he fled from the building). Although the State argues that probable cause existed because Barfield fled further into the apartment upon sight of the officers, flight alone is insufficient to warrant a forcible stop of an individual. *Harris v. State*, 205 Ga. App. 813, 813 (1) (423 SE2d 723) (1992). See also *In the Interest of J. L. G.*, 209 Ga. App. 565, 566-567 (434 SE2d 126) (1993) (flight, when combined with other circumstances, may give rise to probable cause). Further, it is well-established that "mere presence in an area of suspected crime is not enough to support a reasonable,

9

particularized suspicion that the person is committing a crime." (Punctuation and footnote omitted.) *Ewumi v. State*, 315 Ga. App. 656, 659-660 (1) (727 SE2d 257) (2012) (the fact that defendant was walking away from and ignoring the officer, was present in a high-crime area, and was walking in a slumped position while wearing a hooded sweatshirt was not sufficient to make an objective determination that defendant was about to be engaged in criminal activity). See also *Powell v. State*, 163 Ga. App. 801, 802-803 (295 SE2d 560) (1982) (evidence that defendant was observed looking at roadway near a field with freshly planted marijuana plants did not establish probable cause for arrest).

Based on the evidence in this case, we find that the police officers did not have probable cause to conclude that Barfield was the occupant of the stolen car or had committed any other crime *before* they entered the apartment and saw the contraband. The fact that Barfield met the vague description given by Hall and fled upon sight of the officers, without more, was not enough to give rise to probable cause to arrest. Compare *In the Interest of J. L. G.*, supra (probable cause existed to detain and question defendant when officers received an anonymous tip that a shirtless black male was acting suspiciously in a specific location, a police officer saw a shirtless black male in that specified location put his hand in his pocket and began to run when

the officer exited his vehicle, the man refused the officers' commands to halt, and numerous small packages of drugs were discovered on the ground near where the defendant fell. However, the defendant was not in his home when he was encountered).

Although Hall's tip in the instant case certainly warranted police investigation, further observation and corroboration was required to connect Barfield to the stolen car before officers had probable cause to arrest him.[2] Accordingly, we find that the warrantless intrusion into the apartment violated Heitkamp's Fourth Amendment rights, and the trial court erred by denying the motion to suppress.

2. As a result of our holding in Division 2, we need not address Heitkamp's remaining enumerations of error.

*Judgment reversed. Dillard, C. J., and Self, J., concur.*

---

[2] For example, had Hall specifically identified Barfield as being the person which he had seen in he stolen car, our analysis and conclusion may have been different. We also note that he officers could have waited until Barfield exited the apartment to detain and question him.

11