**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 22, 2022**

# In the Court of Appeals of Georgia

A22A0772. WATSON v. THE STATE.

PER CURIAM.

Following a bench trial, Tyrone Steven Watson was convicted of trafficking in illegal drugs. He appeals from the denial of his motion for new trial, arguing that his conviction should be reversed on procedural grounds and, alternatively, that the trial court should have granted his motion to suppress. Finding no reversible error, we affirm.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the record shows that federal agents informed a police officer with the High Intensity Drug Trafficking Area ("HIDTA") Task Force that a confidential informant ("CI") reported that Watson would be driving from Alabama to Atlanta to pick up between five and ten kilograms of heroin,

cocaine, or both. Multiple law enforcement officers, including Georgia State Patrol troopers, collaboratively worked the operation in response to the tip.

Subsequently, the CI, who was wearing a live recording device, was set to meet with Watson in a hotel parking lot. The CI was given a code phrase to alert the officers that the drugs were on the scene. When Watson arrived in the vehicle identified by the federal agents, the CI used the code phrase and indicated that the drugs were in Watson's trunk. Watson was allowed to leave the parking lot, and a HIDTA officer alerted the troopers to execute a traffic stop when they had probable cause to do so. As part of the operation, the troopers had been told that Watson would be carrying narcotics.

The trooper who initiated the stop testified that he frequently assisted HIDTA with traffic stops involving drug traffickers; that he listened to what was happening during the drug transaction on the car radio prior to stopping Watson; and that he stopped Watson after observing him following another vehicle too closely. When he approached Watson's car, the trooper told Watson the reason for the stop, and asked him to get out and sit in the front seat of the police cruiser. Watson could not explain why he was in Georgia and refused to consent to the search of his vehicle. A K-9 unit arrived, and the dog alerted to the presence of narcotics in Watson's car. The officers

then conducted a probable cause search, and the drugs were discovered in the trunk. Watson was charged with trafficking in illegal drugs, specifically heroin.

Watson filed a motion to suppress the seized evidence, and the trial court denied the motion. A bench trial ensued, during which Watson stipulated to the trial court's consideration of the testimony and evidence presented at the motion to suppress hearing, the chain of custody for the suspected heroin seized in the case, and that the K-9 unit dog was certified and alerted to the narcotics. Watson, however, did not stipulate that he possessed the drugs or that they were a controlled substance. The only witness called at the bench trial was the State's forensic chemist, who testified that the substance taken from Watson's trunk tested positive for heroin and the first sample weighed 860 grams. The court found Watson guilty of trafficking in illegal drugs. Watson moved for a new trial, which the trial court denied. This appeal followed.

1. Watson's first enumerated error turns on a procedural issue he raised in his motion for new trial. Specifically, Watson contends that the evidence was not properly before the Court because issue was not joined until after the testimony establishing the identity and weight of the suspected heroin. Consequently, the State failed to prove an essential element necessary to support his trafficking conviction.

3

The State concedes that issue was not joined until after its crime lab witness testified,[1] but nevertheless maintains the conviction should not be reversed. We agree with the State.

OCGA § 17-7-96, which governs the joining of issue, provides that "[t]he arraignment and plea of the person accused of committing a crime shall be entered on the indictment or accusation by the prosecuting attorney or other person acting as prosecuting officer on the part of the [S]tate." The failure to object to a late arraignment before the verdict, however, is fatal to the claimed error that issue was not joined in a timely manner. In *Moss v. State*, 298 Ga. 613 (738 SE2d 652) (2016), the defendant was arraigned after the close of evidence but before the court sent the indictment back with the jury. There, the Supreme Court of Georgia noted that, because the

> [a]ppellant never objected at trial to the lack of an earlier arraignment . . . any error in the lack of arraignment was waived by his failure to raise the issue prior to verdict. Moreover, [the a]ppellant's rights were not affected by the late arraignment, as he does not assert that he was unaware of the charges against him, both sides participated in discovery

---

[1] The indictment filed against Watson did not show on its face that Watson had waived a copy of his indictment and was not signed by Watson, his attorney, or the prosecutor, and no plea was entered at Watson's arraignment.

and filed motions, and it is clear from his proceeding to trial that he was offering a plea of not guilty.

Id. at 615 (2) (citations and punctuation omitted); see also *Spear v. State*, 270 Ga. 628, 632 (5) (513 SE2d 489) (1999) ("any error in the lack of arraignment was waived by [the] failure to raise the issue prior to verdict") (citation omitted); *Frazier v. State*, 204 Ga. App. 795 (420 SE2d 824) (1992) ("The right of formal arraignment and plea will be conclusively considered as waived, where the defendant goes to trial . . . on the merits, and fails, until after verdict, to bring to the attention of the court that he has not been formally called upon to enter a plea to the indictment.") (citation and punctuation omitted). Accordingly, Watson's failure to raise the issue or object before the verdict amounts to a waiver of the issue and is fatal to his claimed error.

2. Alternatively, Watson argues that his motion to suppress should have been granted for two reasons: (1) the information about the drugs came exclusively from an informant the State did not prove was reliable; and (2) the collective knowledge attributed to the trooper who initiated the stop was too vague. We disagree.

"When reviewing the grant or denial of a motion to suppress, an appellate court must construe the evidentiary record in the light most favorable to the trial court's factual findings and judgment. An appellate court also generally must limit its

5

consideration of the disputed facts to those expressly found by the trial court." *Caffee v. State*, 303 Ga. 557 (814 SE2d 386) (2018) (citations and punctuation omitted). Construing the evidentiary record as we are required to do, neither of Watson's arguments warrants the reversal of his conviction.

(a) Watson's argument that the State did not offer evidence to establish the informant's reliability lacks merit. We do not judge the reliability of information provided by an informant by any rigid test. *Bryant v. State*, 288 Ga. 876, 893 (13) (a) (708 SE2d 362) (2011); see also *Nunez-Mendoza v. State*, 354 Ga. App. 297, 300 (1) (840 SE2d 771) (2020).

> Generally, probable cause is determined by the totality of the circumstances surrounding (1) the basis of the informant's knowledge and (2) the informant's veracity or reliability. A deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

*Bryant*, 288 Ga. at 893 (13) (a) (citation and punctuation omitted). Here, the CI gave specific information regarding Watson by name, gave the time and place of the drug exchange, and described the car that Watson would be driving. These factors were all corroborated through the officers' surveillance. Additionally, the HIDTA officer testified that the CI previously provided information to law enforcement that resulted

6

in convictions and the seizure of illegal drugs. Thus, there was sufficient evidence of the CI's reliability. See *Anthony v. State*, 197 Ga. App. 297, 298 (1) (398 SE2d 580) (1990) (informant deemed reliable because his information had resulted in three or four prior arrests); compare *Heitkamp v. State*, 342 Ga. App. 674, 678 (1) (804 SE2d 702) (2017) (denial of motion to suppress erroneous where officers did not testify that the informant had a reputation for being truthful or reliable, and informant's description of perpetrator lacked specificity).

(b) Watson contends that the trial court erred by denying his motion to suppress the drugs because the stop was pretextual, and the subsequent search was illegal as the trooper did not have independent knowledge of the drugs. We are not persuaded.

First, the stop was not pretextual. It is well-established law that "when an officer observes a traffic offense, the resulting traffic stop does not violate the Fourth Amendment of the United States Constitution even if the officer has ulterior motives in initiating the stop, and even if a reasonable officer would not have made the stop under the same circumstances." *Hall v. State*, 351 Ga. App. 695, 699 (1) (832 SE2d 669) (2019) (citations and punctuation omitted). Pretermitting whether the trooper was authorized to make the stop based on the drug operation alone, he testified that it was his practice to "get [his] own probable cause" to justify a stop. Watson was

7

observed following another vehicle too closely, in violation of OCGA § 40-6-49,[2] and the trooper was authorized to conduct the stop for that reason.

The next question is whether the trooper was authorized to detain Watson until the K-9 unit arrived. As we stated in *Hall*, "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." 351 Ga. App. at 699 (1) (citations and punctuation omitted). And, "after the tasks related to the investigation of the traffic violation and processing of the citation have been accomplished, an officer cannot continue to detain an individual without reasonable articulable suspicion." Id. at 699-700 (1) (citations and punctuation omitted). However, "reasonable, articulable suspicion need not be based on an arresting officer's knowledge alone, but may exist based on the collective knowledge of the police when there is reliable communication between an officer supplying the information and an officer acting on that information." Id. at 700 (1) (citations and punctuation omitted).

---

[2] The statute provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." OCGA § 40-6-49 (a).

In *Hall*, which is analogous to the instant case, after conducting surveillance of a suspected drug transaction, HIDTA officers identified the defendant's vehicle, and informed a trooper of a drug deal before requesting a traffic stop, which the trooper conducted after observing the defendant make an improper lane change. 351 Ga. App. at 697-698. We held that the information shared by the HIDTA officer was "'collective knowledge' [that] provided the trooper with reasonable, articulable suspicion, which, in turn, justified prolonging the traffic stop until the arrival of the K-9 officer and his dog." Id. at 700-701 (1).

Similarly, here, the trooper had reasonable, articulable suspicion that Watson was involved in illegal drug activity when he initiated the traffic stop. HIDTA officers informed him that Watson was suspected of engaging in a drug transaction shortly before the traffic stop. Indeed, the HIDTA offiers witnessed the transaction, and the trooper, himself, listened to the events as they unfolded over the radio. The collective knowledge of the several officers was more than sufficient to justify the

9

stop.[3] See *Hall*, at 700-701 (1). Accordingly, the trial court did not err in denying Watson's motion to suppress the evidence seized from his vehicle.

*Judgment affirmed. Division Per Curiam. All Judges concur.*

---

[3] Watson argues that *Hall* is inapposite because it did not involve an informant, and asserts summarily that the collective knowledge rule does not apply to informants. But Watson cites to no authority supporting this position, and the absence of an informant in *Hall* does not alter the law regarding collective knowledge. Additionally, Watson asserts that the trooper was only told that the car had "unspecified drugs in it," not that the car had illegal drugs in it, and "[n]ot all drugs are illegal." But the trial court determined that the trooper was informed by a HIDTA officer that the car "contained illegal drugs," and we must accept the trial court's findings unless clearly erroneous. See *Cox v. State*, 306 Ga. 736, 745 (3) (b) (832 SE2d 354) (2019) (when reviewing ruling on a motion to suppress . . . , we defer to the trial court's findings on disputed facts and will not upset them unless they are clearly erroneous). Here, the trial court's finding was supported by the record.