**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 8, 2025**

# In the Court of Appeals of Georgia

A25A1355. THE STATE v. ROSS.

BARNES, Presiding Judge.

In June 2022, as he sat in his car in a parking lot with a runaway 15-year-old girl, Moirice Ross was arrested for interference with custody. After an investigation including a search incident to arrest and a custodial interrogation, Ross was indicted in November 2022 on charges of rape, aggravated child molestation, and child molestation. Ross filed a motion to suppress evidence obtained after his arrest on the ground that police did not have probable cause when they arrested him. After a hearing, the trial court granted Ross's motion. On appeal from that ruling, the State argues that the grant was erroneous because police did have probable cause to arrest Ross. We find no error and affirm.

We apply "three fundamental principles" in reviewing a trial court's ruling on a motion to suppress:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation and punctuation omitted.) *Miller v. State*, 288 Ga. 286, 286 (1) (702 SE2d 888) (2010). "To properly follow the first principle, we must focus on the facts found by the trial court in its order, as the trial court sits as the trier of fact." Id. at 287.

Thus viewed in favor of the trial court's findings and judgment, the record shows that on the early afternoon of June 7, 2022, a 15-year-old girl's mother reported her missing. At first, the girl's phone was offline and could not be traced, but at some point it was turned back on and law enforcement tracked the signal to the parking lot of an auto parts store, where the signal stopped moving. The store was open for business, but it was raining, and Ross's car was the only vehicle in the parking lot. The

detective saw the girl sitting in Ross's car, which was parked "sideways," as if about to leave, so he blocked in Ross's car, removed Ross from the vehicle, placed him in handcuffs, and arrested him for interference with custody. Ross was searched and his vehicle impounded.

During Ross's custodial interview, he initially stated that he told the girl that he could not drive her anywhere but that she could charge her phone in his car. He later admitted that he took her to get pizza and that she went with him as he worked on a car at an Express Lube before they came back to the auto parts store. He stated that the girl told him that she was 18, that he became aroused at one point when she brushed against him, and that he hugged her and kissed her neck.

At the hearing on the motion to suppress, the detective stated that he arrested Ross because "he interfered with custody and the child was not at her house and the parents hadn't given her permission to leave the house," because he saw a "15-year-old girl in the car with a grown man," and because her parents had stated that "she did not have permission to be in a vehicle with anyone." The detective also testified, however, that nothing "indecent" was going on in the car and that he did not ask Ross any questions, including if he knew the girl's age, before arresting him. Another

detective testified that police had no indication before Ross's arrest that the girl had communicated with him on social media.

The State argued that the officer had probable cause to arrest based on "the totality of [the] circumstances" because "it wasn't just a minor alone in a car; it's a case where a report had been made of the minor missing, and there were concerns that the minor was talking or chatting with adult males." The trial court made the following findings of fact:

> Prior to Ross's arrest, the extent of [the] detective's knowledge as to [the] girl, either personally or collectively with other officers, was that the girl's mother had reported her 15-year-old daughter missing, the girl did not have permission to be gone, the daughter had run away, the daughter had a phone with her that at times was turned off and at the time the detective located her was turned on, the phone when turned on pinged to locations within a certain range, the phone was stationary at the time the detective found the daughter in the car with Ross, the mother had no idea where the daughter was, [and] the daughter had been communicating online with various older males (though the evidence from the hearing shows that Cobb County was never able to confirm that Ross was one of [them]).

> The detective did not participate in the subsequent interviews of Ross and did not ask the daughter or Ross any questions other than to confirm the daughter's identity and to inform Ross that he was under arrest. The

daughter was not bound, gagged, or otherwise hurt when the detective located her. The detective did not observe any indecent or immoral conduct on Ross's part.

The trial court concluded that the arresting officer did not have probable cause to arrest Ross because he "did not know if Ross knew or should have known [that] the daughter was 15, if [the] daughter had run away from home, and/or if the mother had reported the daughter missing." The trial court therefore granted the motion to suppress.

On appeal, the State again contends that the arresting officer had probable cause because he knew that the child had been reported missing, had been communicating online with older men (but not Ross), and was located in a car alone with an older man.

OCGA § 16-5-45 (b) (1) provides in relevant part that "[a] person commits the offense of interference with custody when without lawful authority to do so, the person: (A) *[k]nowingly or recklessly* takes or entices any child or committed person away from the individual who has lawful custody of such child or committed person; [or] (B) *[k]nowingly* harbors any child or committed person who has absconded[.]" (Emphasis supplied.) Probable cause exists when facts and circumstances within an

officer's knowledge are sufficient to warrant a prudent person in believing an offense has been or is being committed by the suspect. See *Hughes v. State*, 296 Ga. 744, 748 (2) (770 SE2d 636) (2015). When a court considers whether an officer had probable cause to arrest a suspect, it must focus on "the facts and circumstances then known to the officer," and inquire whether those facts and circumstances could lead a reasonable officer to conclude that the suspect probably had committed an offense. See id. "The State carries the burden of showing a warrantless arrest was lawful, and the existence of probable cause must be measured by current knowledge, i.e., at the moment the arrest is made and not [with] hindsight." (Citation and punctuation omitted.) *Jackson v. State*, 191 Ga. App. 439, 441 (2) (382 SE2d 177) (1989).

On this record, the trial court was authorized to conclude that the arresting officer lacked probable cause to arrest Ross, that the subsequent search and interrogation were illegal, and that the motion to suppress evidence found in the course of them was properly granted.

"[T]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and the belief of guilt must be particularized with respect to the person to be searched or seized." *Elvine v. State*, 334 Ga. App. 235, 237-238 (1) (779

SE2d 10) (2015). As the trial court found, there was no evidence that this arresting officer had any information, either individually or collectively, that would have justified the conclusion that Ross knew or recklessly disregarded information that the girl sitting in his car was out of the custody of her parents without their permission. (Perhaps this explains why Ross was not charged with interference with custody.) See OCGA § 16-5-45 (b) (1) (A). Likewise, the record here "reveals no intervening circumstances that would attenuate the causal chain" which began with Ross's arrest and led directly to the custodial interviews, which amounted to "fruit of the poisonous tree." See *Pledger v. State*, 257 Ga. App. 794, 798-799 (572 SE2d 348) (2002) (when a search pursuant to consent was tainted by officers' entry without permission into the defendant's home and an illegal seizure of her person, the appellant court reversed the trial court's denial of defendant's motion to suppress evidence obtained in the course of the illegal entry and seizure).

It follows that the trial court did not err when it granted Ross's motion to suppress evidence seized pursuant to his arrest, including the results of his custodial interrogation. *Elvine*, 334 Ga. App. at 237-238 (1) (evidence of a defendant's act of parking his car next to that of an officer posing as a drug seller was insufficient to

provide probable cause to arrest him; reversing the denial of a motion to suppress because "such conduct, without more, simply lacks a sufficient connection to criminal culpability to support a probable cause finding"); see also *State v. Dukes*, 279 Ga. App. 247, 251 (630 SE2d 847) (2006) (officers lacked probable cause to arrest defendant for obstruction based upon flight where defendant had the right to flee from a first-tier encounter).

*Judgment affirmed. Brown, C. J., and Watkins, J., concur.*